The City of Rochester, Respondent, *v.* The Town of Rush, Appellant.

Where in pursuance of statutes (chap. 387, Laws of 1872 ; chap. 563, Laws of 1875), imposing upon the city of Rochester, a system of water-works, "for the use of its inhabitants and the extinguishment of fires," lands were purchased and a reservoir constructed in the town of Rush. *Held,* that the work was to be regarded as executed for the public benefit, and the property, therefore, as held for public purposes ; and so, that in the absence of an express legislative declaration authorizing it, it was not subject to taxation, and that a tax imposed thereon in said town was illegal and void.

*Govs. of Bristol Poor* v. *Wait* (5 A. & E., 1) ; *King* v. *Mayor, etc*, (14 East, 609) ; *Queen* v. *Carlton* (13 A. & E. [N. S.], 116) ; *Yates* v. *Aston* (6 A. & E. [N. S.], 187), distinguished.

Where, however, the said property was assessed by the town assessors, and the city paid the tax to the town collector, who paid it over to the county treasurer, by whom it was applied " in the same manner as other taxes assessed and collected in said town," *i. e.,* a portion paid to the authorities of the town, a portion to the proper State officers and the residue retained for county purposes. *Held,* that an action could not be maintained against the town to recover back the tax, or that portion thereof paid over to the town officers, as the town has no treasurer, and its officers, to whom the money was paid do not represent it, their functions being prescribed by statute, and the money they received being expended in the performance of official duty.

*Chapman* v. *City of B.* (40 N. Y , 372) ; *National Bank of C.* v. *City of E.* (53 id., 49) ; *Newman* v. *Supervisors of L.* (45 id., 676), distinguished.

*It seems,* however, that the city has a remedy in such case under the provision of the statute extending the powers of boards of supervisors (chap. 855, Laws of 1869, as amended by § 5, chap. 695, Laws of 1871), which requires the board of supervisors of a county, upon the order of the county judge, to refund the amount of any tax illegally or improperly assessed.

*City of R.* v. *Town of R.* (15 Hun, 239), reversed.

(Argued February 23, 1880 ; decided March 9, 1880.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, in favor of plaintiff, rendered upon a case submitted under section 1279 of the Code of Civil Procedure. (Reported below, 15 Hun, 239.)

The facts stated in the case were, in substance, as follows : Certain commissioners, appointed under the act, chapter 387, Laws of 1872 and the acts amendatory thereof, constructed a system of water-works for the plaintiff, which was paid for by the proceeds of bonds issued in pursuance of said acts. As a part of said works they purchased lands in the town of Rush and erected thereon a reservoir. The water supplied by said water-works, except so much as was used by said city, was only furnished to consumers upon their paying the water rates prescribed. The moneys so received for rents amount to less than the interest on the bonds issued for the construction of the works. In 1876, the assessors of the said town assessed the said premises in that town, upon which was the reservoir, at $60,000, which assessment was returned to the board of supervisors of the county of Monroe, and a tax was imposed upon plaintiff on said property, for $484.94. Application was made to said board on behalf of plaintiff to strike out the assessment, which application was denied. A warrant was issued to the collector of the town who levied upon property of plaintiff; it thereupon paid the tax under protest. The money was paid over by the collector to the county treasurer, "and by him the same was paid to the proper authorities of the town of Rush in payment of the expenses of the town to the extent of fifty-five dollars, and the balance thereof was paid to the proper authorities of the State of New York, and retained and used by said treasurer for county purposes according to law, in the same manner as other taxes assessed and collected in said town."

The questions submitted were: "Can the town of Rush legally impose a tax upon the said property of the City of Rochester ?

"Can said town legally impose a tax upon any of the property located within its limits, used for the purposes of the system of water-works constructed for said city ?

"If such tax can be levied, should said reservoir be assessed

at the value of the land on which it stands for farming purposes, being the sum of $6,393.90 ?

"Will an action lie against said town of Rush in behalf of said city of Rochester upon the foregoing facts? If so, what should be the amount of damages allowed therein?"

*A. P. Laning*, for appellant. The land and premises being situate within the town of Rush, the assessors acquired jurisdiction, both of the plaintiff and of the premises taxed, and although the assessment be erroneous, it does not lay the foundation of an action. (1 R. S. [6th ed.], 931, § 1; id., 935, 936; *B. and S. Line Ry. Co.* v. *Sup. of Erie*, 48 N. Y., 93; *Williams* v. *Weaver et al.*, 75 id., 30, 34; *Union Bank* v. *Mayor, etc., New York*, 41 Barb., 159; *Swift* v. *City of Poughkeepsie*, 37 N. Y., 511; *Chegaray* v. *Mayor of New York*, 3 Kern., 220; *Genesee Valley Nat. Bank* v. *Board of Supervisors of Livingston Co.*, 53 Barb., 223.) A township cannot, under any circumstances, be held liable in an action to recover back the taxes collected by the town collector and paid over to the county treasurer, even though the tax was illegally assessed. The collector is an independent public officer, whose duties are prescribed by law, and is in no sense the servant or agent of the township. (1 R. S. [6th ed.], 820, 821; *People* v. *Clark*, 53 Barb., 176; *Lorillard* v. *Town of Monroe*, 11 N. Y., 392–394; *Gailor, Supervisor of Milton* v. *Herrick*, 42 Barb., 79; 11 N. Y., 395; *Martin* v. *Mayor of Brooklyn*, 1 Hill, 545.) Neither the fact that the plaintiff is a municipal corporation, nor that the property assessed is part of its water system, exempts the plaintiff from assessment, or from payment of taxes upon it. (Cooley on Taxation, 482; *Touchard* v. *Touchard*, 5 Cal., 306; *Shaw* v. *Shaw*, 9 Mich., 165; *Milhan* v. *Sharp*, 15 Barb., 193–213; *Bailey* v. *Mayor, etc.*, 3 Hill, 531; *D. College* v. *Woodward*, 4 Wheat., 518; *Bailey* v. *Mayor, etc.* [NELSON, Ch. J.], 3 Hill, 539–540; *Holland* v. *San Francisco*, 7 Cal., 376; *Board of Park Com.* v. *Detroit*, 28 Mich., 236, 239; *Western Savings Society* v. *Philadelphia*, 31 Penn.,

183; *Lloyd* v. *Mayor*, 5 N. Y., 374; *Mayor, etc.,* v. *Bailey*, 2 Denio, 446; *Louisville* v. *Commonwealth*, 1 Durall, 295; *Darlington* v. *Mayor New York*, 31 N. Y., 164–192–193.)

*J. A. Stull*, for appellant. The reservoir property, situated in the town of Rush, was not exempt from taxation. (1 Rev. Stat., 360 [Edm. ed.], 3 Co., § 4; *Darlington* v. *Mayor of New York*, 31 N. Y., 164, 182, 183; *Bailey* v. *New York*, 3 Hill, 531; *Lloyd* v. *New York*, 5 N. Y., 369; *Stoers* v. *Utica*, 17 id., 104; *Detroit* v. *Coery*, 9 Mich., 165; *Inhabitants of Wayland* v. *County Commissioners*, 4 Gray, 500.) The assessors having jurisdiction, no action would lie against the town to recover the money paid for this tax, even if the assessment was illegal. (*Swift* v. *City of Poughkeepsie*, 73 N. Y., 571; *Barhydt* v. *Shepheard*, 34 id., 238; *Genesee Valley Bank* v. *Supervisors of Livingston*, 53 Barb., 223; *Union Bank* v. *Mayor of New York*, 51 id., 159; 1 R. S. [Edm. ed.], 360, part 1, chap. 13, tit. 1, § 1; § 6 of tit. 2 [Edm. ed.], 362; Code of Civil Procedure, §§ 1279–1281.)

*James Breck Perkins*, for respondent. The tax imposed was illegal, because the town of Rush has no power to levy a tax upon property of the city of Rochester. (*Worcester Co.* v. *Mayor of Worcester*, 116 Mass., 183; *Inhabitants of Wayland* v. *Commissioners*, 4 Gray, 500; *Piper* v. *Singer*, 4 Serg. & Rawl. [Pa.], 354; Hilliard on Taxation, chap. 5, p. 141, § 4; *U. S.* v. *R. R. Co.*, 17 Wallace, 322; *People* v. *Doe*, 36 Cal., 220, 222; *People* v. *McCreary*, 34 id., 433; *Mayor* v. *Bank of Tennessee*, 1 Swan, 269; *Doyle* v. *Austin*, 47 Cal., 353, 360; *Directors of Poor* v. *School Directors*, 42 Pa., 21; *Town of West Hartford* v. *Water Commissioners*, 44 Conn., 360, 368; *People* v. *Solomon*, 51 Ill., 37; Cooley, chap. 3, pp. 58, 59.) The construction of the water-works of Rochester was a public purpose, and they are not subject to taxation. (*City of Rochester* v. *Hart*, 52 N. Y., 621;

*People* v. *Batchelor*, 53 id., 128, 144; *People* v. *Flagg*, 46 id., 401; See, also, *People* v. *Solomon*, 51 Ill., 37, 52; *Hartford* v. *Commissioners*, 44 Conn., 360, 369.) The tax imposed being void, this action was maintainable. (*Whitney* v. *Thomas*, 23 N. Y., 281, 285; approved in *Buf. R. R. Co.* v. *Erie Co.*, 48 id., 97; *Bank of Chemung* v. *Elmira*, 53 id., 49.) The water-works of a city are exempt by law from execution, and so exempt from taxation. (*Darlington* v. *Mayor*, 31 N. Y., 164; *Leonard* v. *Brooklyn*, 71 id., 498, 500.) The action can be maintained against the township. (*Lorillard* v. *Town of Monroe*, 11 N. Y., 392; *Chapman* v. *City of Brooklyn*, 40 id., 372; *Newman* v. *Supervisors of Livingston*, 45 id., 676; *Dunnel Co.* v. *Inhabitants of Pawtucket*, 7 Gray, 277; *Torry* v. *Inhabitants of Millbury*, 21 Pick., 64; *Joyner* v. *Inhabitants of School District*, 3 Cush., 567; *Joy* v. *Inhabitants of Oxford*, 3 Greenl. [Maine], 131; *Preston* v. *City of Boston*, 12 Pick., 7; *Jenks* v. *Lima Township*, 17 Ind., 326; *Town Council* v. *Burnet*, 34 Ala., 400; *Trim* v. *School District*, 57 Pa., 433.)

DANFORTH, J. The property assessed forms part of a system of water-works, imposed upon the city of Rochester by direct legislative enactment. (Laws of 1872, chap. 387; Laws of 1875, chap. 563.) It was constructed under the direction of a board of commissioners, who derived their authority exclusively from the Legislature, and whose duty it was to ascertain the best and most expedient plan for supplying that city "with a sufficient quantity of pure and wholesome water, for the use of its inhabitants, and the extinguishment of fires;" and that having been ascertained, they were to proceed and execute it. To pay the expenses of this undertaking, they were authorized to borrow upon the credit of the city, upon bonds issued in its name, money, not exceeding the amount stated in their estimates of its cost; and by the terms of the act "the credit of the city is pledged for payment of the same." To make this promise effectual, the common council was directed "to raise from

time to time by tax upon the estates, real and personal, subject to tax in said city, the sum or sums of money which may be required to pay the interest on said bonds, and to redeem them at maturity." The commissioners under this authority, and as part of the plan adopted by them, obtained the land in question, erected upon it a reservoir which it is conceded is used in the system of water-works, and is a necessary part thereof, for the purpose of storing water to be thence conveyed in pipes to the city. The act under which these proceedings where taken could be valid only because its direct object was the promotion of the health and safety of the property of the citizens who were required to provide by taxation the means for carrying it on (*People ex rel. Dun., W. and P. R. R. Co.* v. *Bachellor*, 53 N. Y., 128; *People* v. *Flagg*, 46 id., 401); and the work undertaken in pursuance of its directions must be regarded as executed for the public good, and the property therefore held for public purposes. (*Brewster* v. *City of Syracuse*, 19 N. Y., 116; *Town of Guilford* v. *Supervisors*, 13 id., 143; *Darlington* v. *Mayor, etc.*, 31 id., 164.) It is itself the result or product of taxation. It stands in place of the money so raised, and therefore cannot be taken or diminished by taxation. This is clearly so upon principle, but it is also well settled by authority. *United States* v. *Railroad Co.*, 17 Wall., 322; *Worcester Co.* v. *Mayor of Worcester*, 116 Mass., 193; *Inhabitants of Wayland* v. *Commissioners, etc.*, 4 Gray, 500; *People* v. *Doe*, 36 Cal., 220; *Town of West Hartford* v. *Hartford*, 44 Conn., 360.) The precise question has not been before this court, but analogous cases have been determined by it, upon reasons which control the one before us. (*Darlington* v. *The Mayor*, 31 N. Y., 164; *Leonard* v. *The City of Brooklyn*, 71 id., 498.) In the first case it was held that such estate, real or personal, as may by law be devoted to public use, such as the public edifices, or the public parks or grounds, cannot be taken, to satisfy a judgment against the corporation; for, says DENIO, J., "these are public property, devoted to specific public uses,

in the same sense as similar subjects in ths use of the State government." In the other case it was sought to enforce a mechanic's lien, for labor and materials furnished in the erection of a fire-bell tower in the city of Brooklyn, and the right to do so was denied, because "it would interfere with the practical workings of the municipal government in the discharge of its legitimate functions;" and the remarks of Denio, J., above quoted, are approved. This principle must apply here. A bell-tower, from which the alarm of fire may be sounded, cannot be considered more necessary in the scheme of municipal affairs and good government than water-works, which will furnish the means of extinguishing the fire when its existence is announced.

If this tax is valid it may be enforced by sale of the property taxed, and it can make no difference whether the sale is under an execution upon a judgment, or a decree in equity, on a tax warrant. In either event the purpose of the Legislature would be defeated. In the absence of an express declaration to that effect we cannot suppose that the Legislature intended that the works thus imposed upon the city should be subjected to taxation in the towns and villages through or in which the work was to be constructed. The cost of the work was to be estimated; the amount of the estimate is named as the measure of liability, and taxation is directed for principal and interest, but no provision is made for a burden, the extent of which could not be estimated, and the weight of which would be felt with increasing severity at annually recurring periods. I have not omitted the examination of the various authorities to which our attention has been called by the learned and ingenious counsel for the appellant, or which have been cited in the printed briefs. The English cases (5 A. & E., 1; 14 East, 609; 1 E. & E., 516; 10 A. & E., 259; 13 id. [N. S.], 116; 6 id., 187), stand to some extent upon statutory regulations, or local ordinances, unlike any which concern us, but even in those cases, a distinction is recognized, between property and works used exclusively for the public benefit,

and those from which a private benefit or profit is derived. So far therefore as any principle can be deduced from them, it does not favor the appellant.

In the case of *The King* v. *The Commissioners, etc.* (4 T. R., 730), the commissioners of navigation were authorized to take certain tolls, the whole of which were directed to be applied to public purposes, and it was held that they were not ratable to the poor. In *The King* v. *The Inhabitants of Liverpool* (7 B. & C., 61), it was argued that although the public was benefited by the docks, yet that was no ground for exempting property from poor rates, because there was also a private benefit, but the court held otherwise upon the ground stated in *Rex* v. *The Commissioners* (*supra*). In *Reg.* v. *Shee* (4 A. & E. [N. S.], 2), the court approve and follow the language of Lord Ellenborough in *Rex* v. *Terrott* (3 East, 506), saying it settled this branch of the law, viz : " the principle to be collected from all the cases on the subject, is that if the party vested have the use of the building or other subject of the rates as a mere servant of the Crown, or of any public body, and have no beneficial occupation of, or emolument resulting from it in any personal and private respect, then he is not ratable," and so it was held in *Reg.* v. *Exminster* (12 A. & E., 12), although the property in respect to which the rate was imposed was locally situated out of the borough to be benefited. No case has been cited to the effect that property wholly devoted to public use, either by the manner of occupation, or the statutory direction as to the application of revenues, can be taxed. The latter is the case before us. The statute (Laws of 1875, chap. 563, § 2) authorizes the water commissioners to adjust the prices and rents which shall be paid for the use of water supplied by the waterworks and collect the same as other city taxes are collected, but requires that they shall be " deposited with the treasurer of the city, and be reserved and used by him exclusively for payment of operating expenses, salaries, repairs, maintenance and extensions of said works, of the interest upon

the water-bonds issued for their construction, or for further extension of the same, or for a sinking fund for payment of the principal of said water-bonds, but for no other purpose whatever." This statute excludes the idea that the property is taxable, else the fund raised under its authority would be diminished or misapplied, or the means of payment must be derived from other taxation, or the property which is the result of taxation be sold to satisfy a tax upon it.

The argument of the appellant that the property in question would properly be exempt from a city tax, as it was procured by a tax upon property within the city, but not from a county tax, because the people of the county were not taxed to procure it, would apply with equal force to the city hall, and engine-houses, and machines and equipments, which make those houses necessary, and if sound would subject them to the hazard of sale under a treasurer's warrant for the enforcement of a county tax. I am unable to perceive that in any sense the water-works can be regarded as the private property of the city as distinguished from property held by it for public use. These considerations lead to the opinion that the property was not taxable, and that the proceedings on the part of the assessors of the town of Rush in regard thereto, cannot be sustained. It is however contended by the appellant, that even if the tax was illegal and void, an action would not lie against the town to recover back the money paid in consequence of it. The question was not presented in the Supreme Court, but it is in the case submitted, and as it could not have been obviated in that court, the appellant is entitled to raise it upon this appeal. The case states, that " the plaintiff paid the amount of the tax to the collector, who held a warrant for its enforcement, and it was by him paid over to the treasurer of the county of Monroe, who paid fifty-five dollars thereof to the authorities of the town of Rush in payment of the expenses of said town, and a portion of the balance to the proper officers of the State, and retained and used the residue for county purposes according to law, in the same manner as other taxes col-

lected and assessed in said town." Upon the assumption that the town may be liable for money had and received, the recovery could not exceed the above sum of fifty-five dollars, but although the names of office of the persons to whom that was paid are not given, we know that it could legally have been paid only to the supervisor, commissioners of highways, or overseers of the poor. They do not represent the town. Their functions are prescribed by statute, and the money they receive is to be expended in the performance of official duty. The town has no treasury, and therefore the cases cited by the learned counsel for the respondent, viz.: *Chapman* v. *The City of Brooklyn* (40 N. Y., 372) ; *National Bank of Chemung* v. *Elmira* (53 id., 49) ; *Newman* v. *Supervisors of Livingston* (45 id., 676), have no application, for as is said in the latter case, " a county has a treasury and a treasurer, and money may be paid not only for its use, but may be received directly for it into its treasury, and from thence paid out by it for its own use." So was it in the other cases ; the city had its treasury and its treasurer. The town has neither. On the other hand *Lorillard* v. *The Town of Monroe* (11 N. Y., 392), and *People ex rel. Van Keuren* v. *Board of Town Auditors* (74 id., 311), clearly establish that an action cannot be sustained against a town upon the facts disclosed in this record. But the plaintiff is not remediless. Without reference to other modes of relief, it would seem that upon the stated facts, and the legal conclusion applicable thereto, the case may be within the provisions of the statute of 1869 (chap. 855, as amended by the statute of 1871 ; chap. 695 § 5), which requires the board of supervisors, upon the order of the county court, to refund the amount of any tax illegally or improperly assessed or levied, and at the same time prevents injustice to the town, by requiring the sum so refunded to be raised from the several towns of the county in such proportion as shall be just, taking into consideration the State, county and town tax included therein.

The judgment must therefore be reversed, and judgment

ordered for the defendant, but as the point which makes this result necessary was not raised in the Supreme Court, it should be without costs.

All concur.

Judgment reversed.