Brown, J.
This case has been submitted without argument upon the written briefs of counsel. The facts, about which there is no dispute, appear from the petition of the relator and the return of the respondents, to be as follows :
The city of New York owns certain lands, at or near the foot of Fulton street, in the city of Brooklyn, which have been assessed by the assessors of said last named city at the sum of $128,000.
This land, in connection with the ferry franchise, is leased by the city of New York to the Union Ferry Company. The buildings upon the land are owned by and are separately assessed to the ferry company.
It is claimed by the relators that the land is not taxable property, and this proceeding is brought to have the assessment stricken from the roll. On the other hand, the respondents claim that the property is not held for public purposes, but for the private benefit of the city.
It does not appear from the papers before me how or when the city of New York acquired title to the land in question. It is conceded that for a very long time it has been used as the landing place of the ferry; and the title appears to have been acquired in the very early life of the city. It did not come with the first grant of the ferry franchise in 1686.
That grant makes no specific reference to the landing place on the Brooklyn side of the river. It, however, recites the ferry as existing and established and as operated by the city. Presumably, therefore, title had then been acquired.
We have, therefore, the fact that the land in question has been for two hundred years and upwards devoted to the purpose of the ferry, and it is impossible to consider its tax *160 able character independent of its use in that connection and its devotion by the city to that purpose.
In determining, therefore, whether or not the land is taxable property, it must be classed with the ferry franchise, and if that property is not taxable, then the land in question, as a necessary, part of the ferry, must be likewise, exempt.
The general rule of law upon this subject appears to be that property owned by a State, or by the United States, or by a municipality for public use, is not subject to be taxed unless so provided by positive legislation (Dillon on Mun. Corp. 3 ed. § 773, and p. 604 ; Cooley on Tax. 132, note ; The Collector v. Day, 11 Wall. 113 ; State v. Gaffney, 34 N. Y. Law, 131-133; U. S. v. Railroad Co., 17 Wall. 322 ; City of Rochester v. Town of Rush, 80 N. Y. 302 ; City of Louisville v. Commonwealth, 1 Duvall, 295 ; Darlington v. Mayor, 31 N. Y. 164).
At page 130 of his work on taxation, Judge Cooley says“ Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the legislature in adopting them. A State may, if the legislature see fit, tax all the property owned by its municipal divisions ; but to do so would render necessary new taxes to meet the demand of this tax, and thus the public would bo taxing itself in order to raise money to pay over to itself, and no one would be benefitted but the officers employed. It is always to be assumed that the general language of statutes is made use of with reference to taxable subjects, and the property of municipalities is not in any proper sense taxable. It is therefore by clear implication excluded.”
And in Louisville v. Commonwealth (supra), the supreme court of Kentucky says : “ A general law concerning persons may include artificial as well as natural persons, and every corporation is a legal person. Even the U nited States and every separate State, and every county in each State, are quasi corporations, and each of all such corporations is in law a person. And consequently á tax on the real estate of *161 all persons would, without qualification or exception, literally include that of every corporation, municipal as well as private. But in this respect, there is an obvious and essential distinction between municipal and private corporations. A private corporation, like a bank or railroad, is, in technical language altogether personal. But a municipal corporation, like a State, a county or a city, is much more than a person; while nominally a person, it is really a political power, and each, in its prescribed sphere is vmperium in imperio. . . . But neither a State nor a county has ever been considered a person contemplated by any tax law ever enacted. And does not the real reason for this constructive exclusion, equally except the municipal property of Louisville, used for the convenience and facility of its local government ? We think so, and without elaborate argument we so adjudge.”
But while this general principle is conceded to be the law by all the authorities upon this subject, there has been and is still a wide difference of opinion between courts and judges in determining precisely what property must be considered as held for a public use.
Thus, in the Kentucky case just cited, it was held that property owned by the city for the convenience and profit of its citizens, was owned by it in its private capacity, the same as if by a private corporation, and was subject to- taxation, and the court accordingly held that the court house, city hall and prison were exempt, but that wharves, engine houses, fire engines, and other property not actually devoted to governmental purposes, was to be taxed.
This case would within this State be considered by every one familiar with this subject as taking too narrow a view of the question, in the practical application of the legal principle I have cited, and it probably would not be questioned but that all • property. devoted to supplying a municipality with water, light, or means of extinguishing fire, etc., was clearly devoted to a public use, although not strictly to a governmental use.
*162 Judge Dillon in his work on Municipal Corporations, at section 615, note, in commenting upon this case, says that in his judgment the exemption should have been extended to the whole property—that the authority given to municipal corporations to erect market houses and wharves, and to purchase fire engines, etc., is not for the purpose of profit to the municipality, but for the good of its citizens.
The private side or character of a public corporation has, however, often been recognized by courts and judges in other cases. The learned counsel for the respondents have cited several such. In none of them, however, was the question as to the taxable character of the corporate property presented.
It is true that the opinions speak of the municipality holding title to the property the same as a private corporation would, but it is sufficient to say of those cases that the views expressed therein have been disapproved by later decisions.
Thus, Judge Denio, in Darlington v. Mayor (31 N. Y. 164), dissented entirely from the opinion of Justice Barculo, in Benson v. Mayor (10 Barb. 223), to the effect that the city of New York held the ferry franchise entirely free from any control of the legislature, and in criticising the view of Chief Justice Nelson, expressed in Bailey v. Mayor (3 Hill, 531), to the effect that the powers conferred by the statutes authorizing the construction of the Croton Water Works were not conferred for the public benefit, but that the whole investment was to be regarded as the private property of the city, and that the corporation did not erect the water works in its public municipal character, but that quoad hoc the city was to be regarded as a private company, says that this opinion was upon a second appeal, in that case substantially repudiated, and can not be regarded as a precedent (See Bailey v. Mayor, 2 Den. 433).
The cases just referred to are very instructive, but they all contain much that would hardly be regarded as sound law .at the present time, and while all, doubtless, are cor *163 rectly decided, so far as the opinions express the views of the judges upon matters not directly in issue, they are of very little importance, and throw very little light upon the question presented in this action.
If we turn to the cases in which the question of taxation was directly presented, it will be found that they are not harmonious in determining what property is held for public purposes, and what for the private benefit of the corporation.
Thus, in State v. Gaffney (34 N. J. Law, 131-133), it was held that property owned by Jersey City, not in actual use, but acquired in good faith, for the purpose of erecting thereon a reservoir, and held in anticipation of the future wants of the city, was exempt from taxation ; while in Town of West Hartford v. Board of Water Commissioners (44 Conn. 360), it was held that property situated in the plaintiff town, and not actually in use, although acquired for purpose of supplying the city of Hartford with water, was liable to be taxed.
In this State, it was held in City of Rochester v. Town of Rush (80 N. Y. 302), that property owned and used by the plaintiff in the town for purpose of a reservoir for supplying the city with water, was exempt from taxation.
In King v. Inhabitants of Liverpool (7 B. & C. 61), it was held that the income from docks and wharves within the pai'ish of Liverpool, was not rateable to the poor.
It is unnecessary to cite other cases. Those referred to are fair examples of the opinion of the courts upon this subject. All concede the general rule of law that property held by a municipal corporation for public purposes, or for public benefit, is exempt. The difference in the opinions exists solely in the practical application of the rule.
The rule laid down in Louisville v. Commonwealth (1 Duvall, 295), would tax all property applied to supplying the city with water, or light, or extinguishing fire, all sewers, parks and museums. It would exempt the city hall, *164 court house, prison, and such property as the city actually occupied for city offices.
No one would, however, claim in this State, that the public parks, museums, picture galleries of the city of New York, nor the public docks along the river front, nor the Croton Water Works were liable to be taxed.
The court of appeals, in Rochester v. Town of Rush (supra), has directly decided as to the latter kind of property, and in Darlington v. Mayor (31 N. Y 164), Judge Denio says that public parks, public edifices and their furniture, and ornaments, would undoubtedly be exempt from sale under execution against the city. And Rex v. Inhabitants of Liverpool (supra), is an authority for the exemption of tlie public docks.
This last case is very similar in its facts to the present action. The dock estates, within the parish of Liverpool, were vested in the mayor and common council as trustees, by virtue of several acts of parliament, and consisted of upward of one hundred a eyes of land. The income therefrom was by the said statute made applicable to building and repairing and maintaining the docks and harbors of Liverpool, and to the payment of the principal and interest of the debt contracted in the acquisition of the land, and the erection of the docks. It was argued in that case, as in this, that there was a private' benefit to the city, but the court held otherwise, and declared the property and income exempt.
In this case, the income derived from the ferry has always been devoted to the public purposes of the city. In the Dongan charter it is described as a ferry established by the city for “ the accommodation of its citizens and travellers.” Its grant by the crown was “ for public use, and the necessary expenses and support of the municipal government.”
In the petition of the city to Lord Cornwallis in 1708, it is averred that the receipts of the ferry “ have always been appropriated for the public service of the government of *165 the city,” specifying the “support of the public buildings, bridges, gaol, fire and candles for the watches, salaries of the officers,” etc.
Subsequently, by an ordinance of the city, the rents became a part of the sinking fund of the city, for the payment of the interest upon its stocks, and later this ordinance was confirmed by the legislature, and now by chap. 410, Laws of 1882, such rents are by law of the State made a part of the sinking fund of the city.
It is difficult to appreciate the distinction between property actually occupied for a municipal purpose, such as land upon which is erected a city hall or court house, and property the income from which is actually made applicable by law to the expense of the municipal government.
Whatever capacity to hold property the municipal corporation has, it derives from the sovereign power of the State. ' Iff therefore, the legislature impose upon a piece of municipal property a particular use, and directs its application to that use and none other, how can it be said that the corporate body holds it as a private person ?
All freedom of action in reference to that property is taken from it, and in its use and dealing with it, it acts only as an agent of the sovereign power, and it holds its title in trust for the public.
The city of New York as a corporate body have no control over the rent of the ferry. They can apply it to no use except the payment of the interest on its debt. It cannot be diverted from that fund, nor can it be reached by the city creditors. It is as completely dedicated and appropriated to a public use as is the city hall, or the parks and water works of the city.
It is very clear that if the piece of land in question can be taxed by the city of Brooklyn, the ferry franchise may be taxed by the State, and its income by the general government.
But in the case of the U. S. v. Railroad Co. (17 Wall. 322), it was held that the income from mortgages held by *166 the city of Baltimore upon the Baltimore & Ohio Bailroad, and which was by law made applicable to the payment of the principal and interest upon the city bonds loaned to the railroad company, was not liable to be taxed by the general government. And in discussing the question of the taxable character of municipal property, Judge Hunt, who delivered the opinion concurred in by a majority of the court, says: “ Was it (the power conferred on the city to issue its bonds) exercised for the benefit of the municipality ? In other words, was it acting in its capacity of an agent of the State, delegated to exercise certain powers for the benefit of the municipality called the city of Baltimore? The legislature and the authorities of the city decided that the investment of $5,000,000, in aid of the construction ®f a railroad, which would bring to that city the unbounded harvests of the West, would be a measure for the benefit of the inhabitants of the city.
“ This vast business was a prize for which the States north of Maryland were contending. Should it endeavor by the expenditure of this credit to bring this vast business into its own State, and make its commercial metropolis great and prosperous, or should it refuse to incur hazard, allow other States to absorb this commerce, and Baltimore to fall into an infirm position ? This was a question for the decision of the city under the authority of the State. It was a question to be decided solely with reference to public and municipal interests. The city had authority to expend its money in opening squares, in widening streets, in deepening rivers, and building common roads and highways. The State could do these things by the direct act of the legislature, or it could empower the city to do them. It could act directly or through the agency of others. The city had the power given it by the legislature to decide the question. It was within the scope of municipal powers.
“ The power in question was conferred because its exercise concerned the public and to benefit that public. This power could no doubt have been imposed upon the city as a *167 duty, and its exercise directed without the assent or against the wish of the corporation or its citizens. The State could do it directly for the city. The city could act only by authority from the State. It is not perceived that the act is less public and municipal in its character than if the State bad compelled the city to lay the tax and to make the appropriation of the proceeds to the railroad company.”
These remarks appear particularly applicable to ' the present case. The right to operate a ferry is a right that belongs to the sovereign power. It has been delegated by the State to the municipality, but its operation is no less a portion of the sovereign authority when it is done through the agency of a town or city corporation.
The right, wherever vested, is one exercised and performed for public benefit, and clearly must be classed with other property exempt by law from taxation.
The acquisition of land in Brooklyn for a landing-place for the ferry, was a thing necessary to the operation of the ferry. It was property which the city in some way was bound to obtain. It could not neglect or refuse to operate the ferry. Such duty could be enforced upon it. The landing-place, therefore, became a necessary part of the property devoted to public use and public benefit, and must like the franchise be exempt from the burden of paying taxes.
I am unable to distinguish this case from the case last cited, or from City of Rochester v. Town of Rush (supra), or Rex v. Inhabitants of Liverpool.
In those cases, the fact whether or not the property in question was held for a public purpose is decided by the purpose impressed upon it by the acts of the legislature, and in the Rochester case it is said that “no case has been cited to the effect that property wholly devoted to public use, either by the manner of occupation or - the statutory direction as to the application of the income can be taxed.”
Here the ferry was established .for a public purpose, its franchise was granted solely for the public benefit, its rev *168 eiraes pursuant to the purposes expressed in the original grant have always been devoted to a public purpose, and such application is now made a duty resting upon the city by act of the legislature.
A clearer case of State agency in the acquisition of property, and its devotion to a public use for a long period of years, could not be stated.
My conclusion is that the ferry franchise is property exempt from taxation under existing laws, and that the landing-place necessarily acquired for the operation of the ferry is also exempt.