CITY OF PROVIDENCE *vs.* HARRY J. HALL *et al.,* Assessors of Town of Scituate:

MAY 9, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J. Land in the town of Scituate, owned by the city of Providence, was returned by the latter to the tax assessors of the town as ratable real estate of the value of $1,713,450 on June 15, 1926. $1,538,200 thereof was claimed to be exempt because used solely for public purposes of the city of Providence in connection with its water supply system. The tax assessors of Scituate declined to recognize the exemption and assessed the entire realty owned by the city within the limits of the town of Scituate for $3,652,505.

The city sought relief from the assessment both on the ground of excessive valuation of all and nontaxability of a large portion of the real estate.

With the claim of excessive valuation we are not now concerned. That question remains in the Superior Court.

The problem presented to us comes on certification of a question of doubt and importance, under Gen. Laws 1923, Ch. 348, Sec. 5.

The question certified is: "Is real estate and improvements thereon belonging to the city of Providence located in the town of Scituate liable to taxation by the town of Scituate under the following state of facts?" The facts then stated recite the acquisition of said land under legislative authority, Ch. 1278, Pub. Laws 1915, for use exclusively as part of a waterworks system and reservoir supplying Providence and other municipalities and their inhabitants in this state; that the city of Providence derives income from the sale of water at rates by it fixed to the towns of North Providence, Johnston and Cranston and their inhabitants as well as to inhabitants of the city of Providence; that neither the town of Scituate nor its inhabitants receive water from said system and that since 1872 the city of Providence has owned real estate in Warwick, Johnston and Cranston used for its water supply system, under an act of the legislature, Ch. 640, Pub. Laws, March 8, 1866, and that said city has paid taxes assessed by said municipalities on such waterworks properties without protest from 1872 until 1926 and thereafter under protest.

The claim made on behalf of the city is that the property in question is public property devoted to public use and therefore not taxable because not expressly so provided by statute. The town's claim is that it is taxable because not "otherwise specially provided" in the exemption statute.

Both sides have presented carefully prepared and helpful briefs. As claimed by the city, numerous courts and eminent textwriters support the contention that property of a municipal corporation used in furnishing such utilities as water, gas, and electricity, is public property devoted to a public use and is entitled to exemption whether located within or without the geographic limits of the municipality owning the system. Pond on Pub. Util. 3rd ed. Ch. 17, p. 414; Cooley on Taxation, Vol. 2, § 643, p. 1351, 4th ed.

It is observable, however, that in many states exemption is given because the statute specially sets forth property owned by a municipality or employed by it for a public use.

Careful examination of the cases cited shows that in Colorado the constitution exempts property "owned by a municipality." *Colo. Springs* v. *Freemont County*, 84 Pacif. 1113. New Hampshire exempts "real estate of the . . . town used for public purposes." *Newport* v. *Unity*, 44 Atl. 704 (1896). In Vermont the exemption is of property "granted for a public use." *Sayles* v. *Newport*, 56 Atl. 662 (1904). See also *Styles* v. *Newport*, 76 Vt. 154 (1901). Maine exempts "the property of any such municipal corporation of this State applied to public uses." *City of Augusta* v. *Water District*, 63 Atl. 663 (1906). Connecticut exempts "buildings with their appurtenances belonging to any . . . city." *North Haven* v. *Wallingford*, 111 Atl. 904 (1920). See also *Town of West Hartford* v. *Board of Water Commissioners*, 44 Conn. 360. Illinois in its constitution provides that "every person and corporation shall pay a tax in proportion to the value of his or her property" and the court states that this includes a municipal corporation. The exemption is "such grounds used exclusively for public purposes" and the court has strictly construed the exemption in *Sanitary District* v. *Martin*, 173 Ill. 243 (1898). In New York the early case of *Rochester* v. *Rush*, 80 N. Y. 302, without specific exemption follows Massachusetts, and Connecticut. It added the doctrine that property produced by taxation could not be taken or diminished by taxation, citing at p. 307, as authority therefor *United States* v. *Railroad Co.*, 17 Wall. 322, and stating the English principle, at p. 309, as laid down by Lord Ellenborough, that if the party vested holds the property as a mere servant of the Crown the property is not ratable even though it be situated outside the borough benefited. *Rex* v. *Terrott*, 3 East 506. *Queen* v. *Exminster*, 12 A. & E. 2. To the same effect was *People* v. *Brooklyn*, 111 N. Y. 505. The *Rush* case is not now followed because of a subsequent statute. See *People* v. *Hess*, 157

N. Y. 42. In the latter case the court held that the earlier New York statute exempted all property held for public use and then stated, at p. 44,. "The present statute is more comprehensive in its terms and provides that all real and personal property within this State is taxable unless exempt from taxation by law. This clearly embraces the property owned by municipal as well as other corporations and subjects it to taxation unless exempt by law." The New York statute then under consideration expressly excluded from exemption property outside the municipal limits. See also *New York* v. *Mitchell*, 183 N. Y. 245 (1905). New Jersey by statute originally exempted all property of a city but by a later statute, in 1903, exempted only such property "when used for public purposes." In *Perth Amboy* v. *Barker*, 74 N. J. L. 127 (1906), the court-held that water-works were public purposes and that public purposes were not confined to governmental purposes. A later statute in New Jersey made a reservoir outside the limits of the town owning the same taxable. See *Jersey City* v. *Blum*, 101 N. J. L. 93. Maryland by statute exempts property "belonging to any incorporated city" and waterworks were held to be exempted in *Anne Arundel Co.* v. *Annapolis*, 126 Md. 445 (1915). Tennessee exempts "all property of . . . municipal corporations." The statute was narrowly construed in *Knoxville* v. *Park City*, 130 Tenn. 626 (1914), to exclude exemption of the waterworks of the city of Knoxville situated within the limits of Park City. In Virginia the court in *Commonwealth* v. *Richmond*, 116 Va. 69, holding waterworks exempt, stated that the settled policy of the State had been for many years to exempt property owned and used by municipalities for public purposes. In Ohio the statute exempted "such property used exclusively for any public purpose" and the court held reservoir property exempt in *Toledo* v. *Hosler*, 54 Ohio 418 (1896). An interesting case, as showing that the real basis of exemption in the court's view rested in sovereignty, is *State* v. *Holcomb*, 85 Kans. 178 (1911), sc. 50 L. N. S. 243, in which the

reservoir property belonging to Kansas City, Mo., but situated in Kansas City, Kans. was held not to be entitled to exemption. In Massachusetts, where no specific exemption by statute was made of property held by a municipality and devoted to a public use, the cases are collated in Nichols on Taxation in Massachusetts, at pp. 217, 218, and the early cases adopted a very liberal attitude. *Worcester* v. *Western R. R. Corp.* 4 Metc. 564. *Inhabitants of Wayland* v. *County Commrs. of Middlesex*, 4 Gray, 500. Latterly, in Massachusetts, special acts relating to particular water supply projects have provided for payments in lieu of taxes to the towns wherein the property was situated. It is to such legislation that the city here claims the town must look if it desires relief from an admitted hardship.

Immunity from taxation must be determined by construction of the constitution or statute of the particular state where the question arises. *Providence and Worcester R. R.* v. *Wright*, 2 R. I. 459, at 466. In some states it is held that such property as is involved in this case is presumptively immune because owned by a governmental division and that it is taxable only if expressly so provided by statute. *Whiting* v. *Lubec*, 115 Atl. 896 (Me.) (1922). The city here admits that ownership by a governmental division is not necessarily for a governmental use. Nowhere is property owned by the city and employed for a governmental use held to be taxable. This is because of the inherent nature of sovereignty. Pond, supra, § 404, calls an attempt to tax such property "The useless and inconsistent formality of permitting the government to tax itself to pay itself money which could finally only be secured by other taxation." This reason has no force when applied to a tax by the town of Scituate imposed upon land owned by the city of Providence within the town limits and not used for a governmental purpose.

The city in furnishing water is not engaged in a governmental function. This has long been our law when its servant's negligence is involved. *Aldrich* v. *Tripp*, 11 R. I.

141. So likewise is the situation with regard to construction of sewers involving failure to maintain lateral support, though without negligence. *Prete* v. *Cray*, 49 R. I. 209. Cf. also *Flint* v. *Stone, Tracy Co.*, 220 U. S. 107, at 172 (tax on a waterworks corporation); *South Carolina* v. *U. S.* 199 U. S. 437 (internal revenue tax on state liquor dispensary). While conceding this, the city claims that its liability for negligence is not a test by which to determine its liability to taxation. For the latter purpose it avers the test to be whether the property is employed for a public purpose. The city cites Cooley on Taxation, Vol. 2, 4th ed. § 638, where the author, among other things, states: "The ultimate test is not municipal ownership but public use," and § 639, "The test of the right to tax is whether the property · is devoted to a public use rather than whether it is used for governmental purposes."

We do not feel at liberty to adopt so broad a doctrine under our constitution and statutes. We may concede the city's claim that it is a public corporation and that the reservoir property is being employed for public use. It is to be noted however that this use is primarily by the city of Providence. We may concede also that from its very nature the property can not be subjected to seizure and sale by the town for nonpayment of the tax. *Rochester* v. *Rush, supra, Sanitary District* v. *Martin, supra.* Even if we agree with *Rossire* v. *Boston*, 4 Allen, 57, in doubting whether a city ever can tax land owned by itself regardless of its use, the argument for exemption when the property is wholly within the limits of the city owning it loses much of its force when applied to a municipality other than that owning the waterworks. Then the payment of the tax is not a mere transfer from one pocket to another of the same taxpayers.

Before considering our statutes it may be well to note a distinction between nontaxable and exempt property. Exemption presupposes a liability to taxation. Pond, *supra*, § 404. Property of the State or that of the city used in

performing delegated governmental functions is free from subjection to tax not because of an exempting statute but by reason of its use in performing duties delegated to the municipality by the sovereign. A municipal corporation however may own and use property like a school building or fire station to carry on a function of the sovereign state or it may own and use property like a reservoir or power house in its proprietary capacity and sell the product to its people and others. In the latter "character it is a mere legal entity or juristic person." *Vilas* v. *Manila*, 220 U. S. 345. Nothing inherent in the nature of property held in the latter way makes it nontaxable. The property being of a taxable nature liability is presupposed and nonliability, if existent, is because of exemption within the strict meaning of the term. Exemption is created by statute or is implied because some reason of public policy makes it imperative. In the case now before us it is admitted that there is no express statutory exemption and we are asked to find an implied exemption.

The taxing power of the town of Scituate is to be found in G. L. 1923, Ch. 58, Sec. 1. "Section 1. All real property in state, and all personal property belonging to the inhabitants thereof, whether individuals, copartnerships, or corporations, and all tangible personal property located in the state belonging to non-residents, shall be liable to taxation unless otherwise specially provided." Section 2 exempts property of the State and the United States and their tax exempt securities, a housekeeper's household furniture up to three hundred dollars and numerous other kinds of property by reason of use for public safety, educational, public, charitable or religious ends, or by special reason of the owner's poverty. The statute as far back as 1844, Sec. 28, p. 431, provided "No property whatsoever of any description not ceded or belonging to the United States or this State except as aforesaid shall on any pretense whatever be deemed to be exempted from taxes; any law or act public or private to the contrary notwithstanding." In the

Revision of 1857, Ch. 37, p. 104, Section 2 reads: "The following property *and no other* shall be exempt from taxation," and then is followed by various specific exemptions. The language remained identical in the Revision of 1872, Ch. 38, p. 102, Revision of 1882, Ch. 41, p. 120, Revision of 1896, Ch. 44, p. 176, and in the Revision of 1909, Ch. 56, p. 242, Sec. 2. These statutes show a strict limiting of exemptions. Identical language except for the omission of the words "and no other" is found in the Revision of 1923. We do not think omission of these words indicated an intention to enlarge the exemptions. By the settled policy of the state, as seen in these statutes, property owned by municipal corporations never expressly has been exempted. Neither in practice has there been implied a broad exemption including generally property owned by a city and used for a public water system. Perhaps this has arisen from our attitude toward implied exemptions. In *Providence and Worcester R. R.* v. *Wright, supra,* our court considering the statute of 1844, refused to follow the Massachusetts view favoring a constructive exemption of a railroad roadbed used by a public utility. The Massachusetts statute made property taxable unless "expressly exempted." Our court stated that, whatever the rule in England or Massachusetts might be, our "more stringent" statute "obviously was intended to exclude constructive exemptions," and that the court was "bound to give this legislation its proper effect." We think our present statute which in section 1 makes real property taxable "unless otherwise specially provided" made the reservoir property taxable in Scituate and that no exemption from taxation is to be implied. In the light of our long existent strict construction and practice in taxation matters we can not adopt the argument that failure of section 2 to enumerate municipally owned property as exempt indicates that all is exempt. *Tripp* v. *Merchants etc. Ins. Co.,* 12 R. I. 435, was a consideration of what property was taxable under section 1. It had no application to the construction of section 2 relating to exemptions.

As before pointed out, it can not be successfully contended under our statutes that this real estate of the city was nontaxable under section 1.

We can see no substantial difference in the meaning of our exemption statute of 1844 and of 1923. One is positive, the other negative in form of statement. Our Constitution provides in Article I, Section 2: "the burdens of the state ought to be fairly distributed among its citizens." It has been our settled policy closely to scrutinize statutory exemptions from taxation because the less property subjected to the tax the greater the burden on the remaining property owners of the town. *McTwiggan* v. *Hunter*, 18 R. I. 776; *Providence & Worcester R. R.* v. *Wright, supra; St. Joseph's Church* v. *Assessors of Taxes*, 12 R. I. 19; *Carpenter* v. *School*, 12 R. I. 574; *Brown University* v. *Granger*, 19 R. I. 704; 2 Cooley, Taxation, 4th ed. § 672. If there be doubt about the construction of a statute, long continued practice is entitled to weight in determining its meaning. *Dyer* v. *Osborne*, 11 R. I. 321, at 323. Long continued practice here is shown to be in favor of taxation. The real estate owned and used for the Providence water supply system is shown by the certification to have been taxed uninterruptedly in Johnston, Warwick and Cranston since 1872 and the tax paid without protest. Neither the original water act of 1866 nor the present act of 1915 has seen fit expressly to exempt the real estate from taxation. The legislature could hardly have failed to know of the existing practice. The town of Scituate had no voice in deciding whether the reservoir should be within its limits. The public welfare of the many inhabitants of Providence controlled legislative action. Even so, however, we ought not to assume that no consideration was given to the rights of the town and that property within its limits was deliberately removed from taxation with no compensating advantage. So carefully drafted a statute as that of 1915 we can not believe was passed with the view that an exemption of waterworks property outside the city limits should be implied and that

the town of Scituate might later apply to the legislature for relief after removal of nearly half of its taxable property without advantage to the town. There can be no doubt of the hardship upon the town if the city's contention is sound.

If two views are possible, of which one more equitably distributes the burdens of taxation, the court should adopt that view unless compelled to do otherwise by decisions or a long course of conduct which ought not to be altered. That this court did, in *Albro* v. *Kettelle*, 42 R. I. 270, alter a practice as to the form of tax returns settled by decisions of this court is admitted. But there the court felt there were urgent reasons of public welfare for so doing. In the present case we see no strong reasons of public welfare for reversing existing practice. Here we are asked to infer a meaning from the absence of language forbidding an exemption and in the face of language making the property taxable "unless otherwise specially provided."

In the light of our statutes, existing decisions, and practice we think the assessment of a tax was warranted. We therefore answer in the affirmative the question submitted.

The papers in the case with our decision certified thereon are sent back to the Superior Court for further proceedings.

*Elmer S. Chace, City Solicitor, Ellis L. Yatman, Francis D. McManus, Assistants,* for City.

*James Harris, Alexander L. Churchill, Clinton G. Clough,* for respondents.