268 A.2d 424.

CHERNOV ENTERPRISES, INC. *vs.* JOSEPH C. SCUNCIO *et al.,*
*Members of the Bureau of Licenses.*

JULY 24, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.   Chernov Enterprises, Inc., a Rhode Island
corporation, and the holder of a Class B retail liquor li-
cense, owns and operates a restaurant and night club
known as "The Warehouse" at 95 India Street in the City
of Providence.   On May 7, 1969, Chernov applied to the
Providence Bureau of Licenses for permission to have "Pa-
cific Gas and Electric," a rock group, and Neil Young, a
singer, perform respectively at the Warehouse on May 11

440

and May 18, 1969, both Sundays, and to charge an admission fee for the shows. The applications were denied.

Notwithstanding that the case was then moot in the sense that the dates for which the applications were filed had long since passed, the possibility that the denials were "capable of repetition, yet evading review" persuaded us to issue the writ. *Southern Pacific Terminal Co.* v. *Interstate Commerce Comm'n*, 219 U. S. 498, 515, 31 S. Ct. 279, 283, 55 L.Ed. 310, 316; *Accord, Moore* v. *Ogilvie*, 394 U. S. 814, 89 S. Ct. 1493, 23 L.Ed.2d 1. We decide only what kind of entertainment is permissible on the premises of a Class B retail liquor establishment.

The controlling statutory framework is confusing. There is the legislation dealing with shows, exhibitions and performances. (G. L. 1956, chap. 22 of title 5, as amended.) Section 1 of that chapter as amended, assigns the responsibility for licensing and regulating in those areas to the respective cities and towns of the state, and sec. 5, as amended, permits prohibition or suppression only if the premises proposed to be used "presents a danger to the public health or safety," or if the "performance, show or exhibition is obscene." (§5-22-5 as amended by P. L. 1966, chap. 260, sec. 1.) A further provision, penal rather than regulatory in form, if not in substance, reads:

> "Whoever offers to view, sets up, sets on foot, maintains or carries on a theatrical exhibition, public show, concert or dance-hall exhibition of any description, at which lager beer or other intoxicating liquors are sold or exposed for sale with his consent, except as provided in *title 3,* shall be fined not exceeding five hundred dollars ($500) or be imprisoned not exceeding six (6) months." (Emphasis supplied.) (§5-22-20.)

Title 3 is the legislation which pertains to alcoholic beverages. Chernov holds a Class B retailer's liquor license. The rights of and the limitations upon such a license are delineated in §3-7-7. It may issue only to a duly licensed bonafide tavernkeeper or victualler; it permits the sale of

alcoholic beverages for consumption on the premises, but only at tables or lunch bars where food is served; and it prohibits the holding of dances within the licensed premises unless a proper permit therefor has been obtained from the local licensing authorities.

In support of its position the Bureau first compares that portion of §3-7-7 relating to the holding of dances with the statutes governing Class C[1] and Class D[2] retail liquor licenses. Neither of those contains any reference authorizing entertainment of any kind to be held on the premises. Then the Bureau compares the Class B statutory provisions with those controlling Class I[3] and Class J[4] retail

[1] A retailer's class C license—commonly known as a saloonkeeper's license —authorizes the selling of alcoholic beverages at retail for consumption upon the premises and permits the serving without specific charge therefor of such things as popcorn, crackers, pretzels, sausages, pickles, potato chips, etc. Specifically forbidden is the cooking of any foods upon the premises, although pre-packaged food cooked and prepared off the premises may be warmed and sold on the premises. (§3-7-8 as amended by P. L. 1969, chap. 46, sec. 1.)

[2] A class D or club license authorizes the holder to keep for sale and to sell alcoholic beverages at retail and to deliver the same for consumption on the premises where sold. (§3-7-11 as amended by P. L. 1967, chap. 188, sec. 1.)

[3] A class I retail license authorizes the selling of alcoholic beverages for consumption on the premises, but only at tables. While generally it has many of the same characteristics as a class B retail license, it differs in that class I premises may be open for business only between the hours of six o'clock p.m. and one o'clock a.m. daily except Sunday, whereas at a class B establishment, while it must keep open for business regularly at least from 9 o'clock a.m. to 7 o'clock p.m., beverages may not be sold or served after 1 o'clock a.m. nor before six o'clock a.m. A further difference is that minors are not allowed upon the premises of a class I establishment. (§3-7-16.)

[4] A class J convention hall license permits the holder to keep and sell beverages at retail for consumption on the premises at times when conventions are being held. The licensed premises may be kept open for business on convention days between the hours of 1 o'clock p.m. and 1 o'clock a.m. No class J license may issue unless the licensee has adequate facilities to accommodate at tables 500 or more persons at one time. Food may be served if the licensee holds a victualling license. (§3-7-16.1 as enacted by P. L. 1966, chap. 218, sec. 1.)

licenses. Insofar as they refer to entertainment, they permit "music, dancing and other forms of entertainment" on the premises of a Class I licensee, and any kind of entertainment on Class J premises so long as it is in conformity with local ordinances.

The Bureau reads the entertainment provisions of the liquor licensing laws (title 3) and the exhibition and performance provisions (chap. 22 of title 5) in *pari materia*. It argues that together they disclose a clear legislative intention to regulate and to limit the kinds and types of entertainment which may take place at establishments where on-the-premises consumption of alcoholic beverages is permitted. Then, after contrasting each of the several liquor law provisions with each of the others, it concludes that the holding of dances is the only kind of entertainment which may be authorized on a Class B retail licensee's premises.

The Bureau's argument might be more persuasive did it not run counter to the administrative construction which title 3 and its precursors have received since the repeal of article XVIII and the adoption of article XXI of amendments to the Constitution of the United States. So construed, a Class B licensee has over the years been permitted to provide its patrons with a variety of entertainment including shows, performances, or exhibitions by vocalists, pianists, guitarists, musical combinations of various types, "M.C.'s," exotic dancers, folk singers, other kinds of singing groups and the like.[5] The only limitations upon

---

[5] A cursory examination of the advertisements appearing in the local press on a recent weekend discloses class B licensees offering the following kinds of entertainment: Denise Mainelli with The Mike Renzi Trio; Anne Loring Quartet; Shirley & The Country Drifters; Lee Collins and His Rhythm Masters; Billy Stubbs at the piano; Tempest Starr (reportedly an exotic dancer); Laurie Brooks and Laurinda Rebeira (vocalists), and Manny Malak (Ad Lib, M.C.)—appearing in two floor shows nightly at 10 and 12; two shows nightly of Robin Blue (reportedly a "stripper")

what might be offered, except as hereinafter indicated, apparently have been that the entertainment, whatever its nature, be *incidental* to the principal business of providing food and drink to patrons, that no *separate* charge be made for it, that the licensing provisions of chap. 22 of title 5, be complied with, and that the safety and obscenity standards established by §5-22-5 as amended, be satisfied.

That long continued practice, particularly where the pertinent statutes are not clearly susceptible to a single meaning, is entitled to great weight in determining legislative intention. *Stidhams* v. *McPherson,* 106 R. I. 295, 296, 259 A.2d 114, 115; *City of Providence* v. *Hall,* 49 R. I. 230, 239, 142 A. 156, 160. Certainly what has been occurring on Class B premises could not have escaped the attention of the legislature over these many years, and notwithstanding the many legislative sessions which have intervened since the enactment of the pertinent legislation the General Assembly has taken no steps to indicate that the administrative interpretation is not in harmony with its intention.

Accordingly, we construe the statute regulating Class B retail licenses as it has been construed administratively throughout the years. That portion of §3-7-7 which provides that a Class B licensee "* * * shall not be permitted to hold dances within the licensed premises, unless proper permits have been properly obtained from the local licensing authorities" does not refer to the incidental kind

---

with the fabulous 4 Kings; Friends, Inc.; The Stanley Green Singers; Pat Zompa and His Guitar.

A drive along Route 6 between Providence and Scituate, Rhode Island's night club strip, so called, will reveal that the foregoing are by no means the only instances of class B licensees offering entertainment other than incidental dancing for which no admission fee is charged.

While conceivably some of the listings may be confined to dancing, the likelihood that the majority is so limited is highly doubtful.

of entertainment which may be provided for patrons while they are dining and for which they pay no separate charge. Instead it refers to the holding of dances to which admission can be obtained only by the payment of a separate fee or charge, and it allows that kind of dancing, even though not incidental to the principal activity of an innkeeper, to be held on the premises of a Class B licensee.

In this case, as we have already indicated, Chernov apparently intended to charge an admission fee to patrons for the privilege of attending the performances of "Pacific Gas and Electric" or Neil Young. For that reason, the Bureau was not in error in denying his applications.

The petition for certiorari is denied and dismissed, and the writ heretofore issued is quashed.

*Seth Gifford*, for petitioner.

*Edward Malloy*, for respondents.