## TOWN OF WEST HARTFORD *vs.* THE BOARD OF WATER COMMISSIONERS OF THE CITY OF HARTFORD.

The Board of Water Commissioners of the city of *H.*, under authority of the legislature and at the city expense purchased a large tract of land in the adjoining town of *W. H.* for reservoirs for collecting and storing water for the use of the inhabitants of the city, the water being brought to the city and distributed by pipes.  Held that the land so purchased and used was not subject to taxation by the town of *W. H.*

And held that it did not affect the case that the water commissioners sold the water to consumers, and paid the interest on the investment and the incidental expenses by the water rents received.

As a matter of advantage in procuring the land required, the commissioners purchased a larger tract than was needed, so that a portion of the land so purchased was not used for the reservoirs. Held that this land was not exempt.

Most public property is in terms made exempt from taxation, but without any such statutory protection it would be exempt upon general principles.

Such public property is generally procured by taxation, and it is against principle that the product of one taxation should be made the subject of another.

AMICABLE SUBMISSION to the Superior Court in Hartford County upon the following agreed statement of facts.

The Board of Water Commissioners of the city of Hartford was made a corporation by an act of the General Assembly, and was empowered, for and in behalf of the city, to take from a brook in West Hartford known as Trout Brook, or any other stream or water course in West Hartford, and convey the same to the city, such supply of water as the convenience and necessity of the inhabitants of the city might require; and to take and hold, for and in behalf of the city, lands or other estate in West Hartford, which should be necessary for the construction of any canals, reservoirs, or other works for conveying or containing water, or for the erection and construction of any buildings or machinery, or for laying any pipes or conductors for carrying the water to the city, and to do any other act necessary or convenient for accomplishing the purposes of supplying the city with water. And in case water should be introduced into the city from any source in West Hartford, it was made the duty of the Board of Water Commissioners to supply the water to the inhabitants of the towns of West Hartford and Hartford, living within a reasonable distance from the line of main pipes, at the same rate of water rents, and upon the same terms and conditions, that the inhabitants of the city were supplied.

In pursuance of the power thus vested in the board it has purchased 327¼ acres of land situated in West Hartford, and has taken deeds conveying the legal title to itself, and has constructed upon the land three large reservoirs for the detention and storing of water from Trout Brook and its branches,

and has laid pipes from the reservoirs to take the water therefrom into the city of Hartford, for the purpose of supplying the inhabitants, and has been and now is distributing the water through the city; and has, with the approbation of the common council of the city, established rates of prices or terms upon which the same is furnished to consumers, and has regulated the terms of payment, and has collected, and is still collecting, the rents for the use of the water from the consumers thereof, to the amount of more than one hundred thousand dollars annually, a sum greater than the annual expenses of the board and the annual interest of its outstanding debt. And the board has supplied and is still supplying the water to the inhabitants of the towns of West Hartford and Hartford, living near the line of main pipes leading from the reservoirs, at the same rate of water rents, and upon the same terms and conditions, as the inhabitants of the city are supplied.

In the purchase of the real estate and the construction of the three reservoirs, the board has expended more than $100,000 in the town of West Hartford, and the land and other estate in that town standing in the name of the board are of that value. A portion of the lands so purchased and held, being 140¾ acres, is not necessary for the construction or use of the reservoirs, and is of the value of two thousand dollars. This land was bought with other land used for the water works, and because the whole could be bought at a better rate than a part. The rest of the land is either covered with water a part of the year, or is used for dykes, or is necessary in making repairs on the reservoirs.

The town of West Hartford claims the right to assess and tax the property situated in the town, and to enforce the collection of the taxes, if necessary, by a sale of the property; and in the exercise of the right claimed, has laid taxes on the assessment lists of 1873, 1874, and 1875.

Upon these facts the case was reserved for the advice of this court.

*L. P. Waldo*, for the plaintiffs.

The right to impose taxes originates in the power of eminent domain, and in free governments they are laid only by the representatives of the people, and of course with the assent of those who have them to pay. The rule by which taxes are imposed and collected is, in this country, generally regulated by constitutional or statutory provisions. In our own state it has been held that the power of taxation is derived exclusively from the action of the legislature. *Thomas Manufacturing Co.* v. *Lathrop*, 7 Conn. R., 550. The statutes on this subject do not make any distinction between natural and artificial persons; and hence corporations are liable to be taxed as natural persons, excepting such as are excused by some provision in their charters. These statutes provide that "all property not exempted shall be liable to taxation as follows:"     *     *     "Lands and separate lots, except house lots, to be set in the list at the average present and actual valuation by the acre." Gen. Statutes, 155, sec. 13. The only exemptions of lands owned by communities or corporations is in the following words: "All property belonging to the United States, or to this state; buildings with their appurtenances, belonging to any county, town, city or borough; buildings or portions of buildings exclusively occupied as colleges, academies, churches, or public school houses, or infirmaries; parsonages of any ecclesiastical society to the value of five thousand dollars, while used solely as such; buildings belonging to and used exclusively for scientific, literary, benevolent or ecclesiastical societies, not including any real estate conveyed by any ecclesiastical society or public or charitable institution without reserving an annual income or rent, or by a conveyance intended to be a perpetual alienation." Gen. Statutes, 155, sec. 12. The land in question stands in the name of the Board of Water Commissioners of the city of Hartford, and by force of the statutes above recited must be assessed and taxed unless it is included in some one of the exemptions. It is, to be sure, said that though the title to the land is vested in the corporation, yet it is held for the use of the city of Hartford, and is therefore equitably the property of the city. If this be con-

Town of West Hartford *v.* Board of Water Commissioners.

ceded, it does not follow that the land is exempt from taxation.  The language of the statute exempting the property of communities is in these words: "Buildings with their appurtenances, belonging to any county, town, city or borough."  In this clause the word "land" is not used, and the exemption in words extends only to buildings with their appurtenances.  This will doubtless include the land on which a building may stand, but can hardly be construed to include land entirely separate and distinct from the building.  As this land is not in any way connected with any building belonging to the city, it is apparent that it cannot be included in any exemption in the statute, even by implication.

But it is claimed that, inasmuch as this land belongs to the city of Hartford, and is used for its benefit, it comes within the principle that exempts property designed and used for public purposes.  It is not even claimed that the one hundred and forty acres that are not necessary or used for the water works come within this principle, for this land is not used for public purposes; and so far as this land is concerned it would seem that there can be no doubt as to its liability to be taxed.  But in relation to the land covered by the reservoirs and their appendages, it must be confessed that this suggestion would be entitled to great consideration had the statute been silent upon this subject.  But when we see that the attention of the legislature was given to property designed and used for public purposes, and that it directed that certain kinds of property so used should be exempt, and all other property taxed, it would seem that the force of this suggestion is somewhat impaired.  For when the taxing power was exempting buildings and their appurtenances belonging to any city, it is a reasonable presumption that the exemption would have been extended to lands, unless it was intended that they should be taxed.

But is this land really designed and used for public purposes?  The Board of Water Commissioners is empowered to establish rates of prices for which the water stored upon this land may be furnished to consumers, has exercised that power, and has regulated the terms of payment.  It has col-

lected and is still collecting rents for the use of this water to the amount of more than one hundred thousand dollars annually, a sum more than sufficient to pay all the expenses of the board, all necessary repairs, and the annual interest on its outstanding debt. There is no provision for any gratuitous use of the water, and it is only furnished to those who are able and willing to comply with the prescribed terms. The excess of the income over the expenditures is to be paid into the treasury of the city, and enures to the benefit of the city in its corporate capacity. Under these circumstances it is difficult for me to see how the public is benefited by the use of this land. But if the use of this land by the city of Hartford exempts it from taxation, on the ground that it is a public use, it must follow that all the land recently taken under the act relating to flowage must also be exempted, for no land can be taken under this act unless it be found that the flowing of it in the manner proposed is of public use. Gen. Statutes, 472, sec. 2; *Olmstead* v. *Camp*, 33 Conn., 550.

It will not be claimed that all property owned by a municipal corporation is exempt from taxation. The true distinction to be observed is believed to be this: All municipal property used for public purposes of local government, such as halls for municipal meetings, courts, prisons and the like, is exempt; but property which is not used for the purpose of carrying on the municipal government, but only for the convenience or profit of the citizens, individually or collectively, which is not specifically exempted, is liable to be taxed. *City of Louisville* v. *Commonwealth*, 1 Duvall, 297.

We are not aware that the questions now under discussion have ever been passed upon by the courts in this state. They have been considered by the courts in some of our sister states, and in Great Britain. Some of these cases will be found on the brief of the learned counsel for the defendant. An examination of all these cases will disclose the fact that judges do not stand on common ground or arrive at unanimous results. In some cases they have put the exemption upon the ground that the possessor had not the power to sell or charge the land with any recognizance or judgment; in some,

that the particular tax was laid by the corporation owning the land on its own property; in some, that the public were to succeed to the property when all charges and expenditures had been reimbursed; and in some cases on the ground that the possessor had no authority to raise money to pay the tax. In a recent case in Great Britain, where trustees were incorporated to construct certain docks, and were, by the act of incorporation, empowered to borrow money on the credit of the tolls granted them, it was held that, assuming all the purposes for which the sums were raised to be public, yet as there was nothing in the act of incorporation to show that the trustees might not lawfully raise from the tolls a sum sufficient to meet such purposes and pay poor rates and other charges, they were liable to be assessed and taxed in respect to buildings on their land. *Regina* v. *Trustees of Birkenhead Docks*, 14 Eng. L. & Eq. R., 128; *S. C.*, 21 Law Jour. Reps. N. S., 209.

*H. C. Robinson*, for the defendants.

1.  The tax laws of the state, so far as they refer to corporations, relate wholly to private corporations. The corporations subjected to taxation are spoken of as having stockholders. Gen. Statutes, 153, 156. Public corporations are nowhere taxed as such.

2.  The general question of taxing property of municipal corporations for public purposes has been raised several times by courts and text writers, and the very strong current of authority is against its propriety. Cooley on Taxation, 131, 132; Dillon on Municp. Corp., §§ 445, 446, 614, 615; *People* v. *McCreery*, 34 Cal., 433; *People* v. *Doe*, 36 id., 220; *Doyle* v. *Austin*, 47 id., 353; *Nashville* v. *Bank of Tennessee*, 1 Swan, 269; *People* v. *Salomon*, 51 Ill., 37, 52; *Piper* v. *Singer*, 4 Serg. & R., 354; *Directors of the Poor* v. *School Directors*, 42 Penn. S. R., 21; *City of Louisville* v. *Commonwealth*, 1 Duvall, 295; *The Queen* v. *Commissioners of Harrogate*, 15 Queen Bench, 1012. Our own court, in a recently thoroughly considered case, (as in other earlier ones,) has held that a local assessment affecting parties specially bene-

fited did not reach the property of a railroad company held for railroad purposes only. *N. York & N. Haven R. R. Co.* v. *City of New Haven,* 42 Conn., 279. *A fortiori* the property of the public held for public purposes owes no debt for taxation for other public purposes.

3. The gores of land left in the hands of the board and not immediately serviceable are mere incidents to their purchase, and their holding is included in the general purposes of the board.

PARDEE, J.    This is an amicable submission under the statute by the Board of Water Commissioners of the city of Hartford upon one side and the town of West Hartford upon the other, of questions which have arisen between them, to the Superior Court upon an agreed statement of facts, and that court has asked the advice of this court as to the judgment to be rendered thereon.

The Board of Water Commissioners were authorized by the legislature to purchase and hold land in the town of West Hartford for the purpose of storing water and carrying it thence to the city of Hartford for the use of its inhabitants; they did purchase and now hold and use for such purpose three hundred and twenty-seven acres of land; upon this the town of West Hartford has assessed taxes and proposes to enforce payment thereof; the commissioners deny their right to subject the land to taxation.

Cities and towns are political corporations, local subdivisions of the state government by means of which, within specified territorial limits, public order is maintained, schools and highways are established, and public health preserved. They exist only for public purposes.    It is contrary to the law of their being that they should by taxation acquire, hold and make profit from money, as do private corporations and individuals.    They have but one method for obtaining it, namely, taxation; but one use for it, namely, the promotion of the public good; they hold it temporarily as stewards of the people until the public creditor demands it.    Taxation implies tribute from the governed to some form of sovereignty; not

the transfer of the property of the latter from one of its servants to another. A tax is levied by a town upon the property of its inhabitants; it is not a charge upon the property which itself already holds for the use of the public. Money in the keeping of a municipality as the result of the exercise of its power of taxation, for one public use, is not to be made to pay tribute to another public use. It has ceased to be taxable property in any legislative or judicial sense. The proceeds of one assessment must be protected against a second, else possibly the public money might be eaten up by the cost of successive assessments and collections, on its passage from the tax payer to the public creditor. So well established is this principle that, if the statute relative to the assessment and collection of taxes had contained no reservation whatever in favor of property held by cities and towns for public purposes, the courts would have assumed that the legislature did not include such in the term "taxable property," but that these words were used with such limitation as repeated judicial decisions and approved commentators upon law have put upon them. Inasmuch however as the assessment of taxes is entrusted to the towns to be made by men skilled in the valuation of property, but presumably unlearned in legal distinctions, the legislature from abundant caution has inserted an exemption of property belonging to the United States, or to this state, and of buildings with their appurtenances belonging to any town or city. And as the exemption of a court house belonging to the United States does not find its first recognition and sole support in this statute, no more does the exemption of town property devoted to the use of the public. Doubtless, when the exemption was first framed, the expression "buildings and their appurtenances" included all forms of investment of corporate property for public uses which up to that time had been found necessary. We do not know that any city in this state had then undertaken to furnish water to its inhabitants. The statute is to be read as if it exempted all property held by municipalities for public use. The legislature found in existence and recognized a well established exemption of such property; and that

privilege is not to be considered as having been abridged, even if the statute failed to enumerate all forms in which such property may be used. The exemption stands upon principle, not alone upon the statute.

The introduction of a supply of water for the preservation of the health of its inhabitants by the city of Hartford is unquestionably now to be accepted as an undertaking for the public good in the judicial sense of that term; not indeed as the discharge of one of the few governmental duties imposed upon it, but as ranking next in order. For this purpose the legislature invested the city with a portion of its sovereignty, and authorized it to enter within the territorial limits of West Hartford and condemn by process of law certain lands therein for the purpose of storing water for its own inhabitants. It authorized the assessment of a tax upon property within the city of Hartford for money wherewith to pay for this land, because the taking and holding was for the public good. Those lands now represent the collected tax. And as the power now resident in the several towns into which the state is divided, in the aggregate represents the sovereign power of the legislature in the imposition of taxes, it is not to be presumed that this has been entrusted to one such corporation to be used as means for weakening a second by gnawing into the proceeds of one assessment by the power of another.

The city of Hartford, in order that it might more economically discharge its duty in this behalf, entrusted this matter of the introduction of water to an agency named the Board of Water Commissioners; and in the name of this agency these lands were purchased and are now held. But they are held merely as a trust; in substance the land was bought and paid for by, and clearly now is the property of, the city.

The Board of Water Commissioners, with the approbation of the city, sells the water which has been stored in West Hartford to consumers both in that town and in Hartford, preferring that method of raising money for interest and expenses to the imposition of a tax, and at the time of the submission thus collected a greater sum than the annual

interest and expenses.   West Hartford urges that by reason of this fact Hartford has ceased to be in this matter a municipality holding property for the public good, and has descended to the level of a pecuniary corporation using property for profit, and has thus placed itself within reach of taxation. But this again is rather in seeming than in reality.   The legislature sanctioned this method of raising money at the time when it declared the undertaking to be one for the public good.   Besides, the fact that the rents at the present time are sufficient to pay the annual charges may be only a fortunate occurrence; this state of things may not continue.   And the town remains liable to taxation for annual deficiencies and for the ultimate payment of the principal expended in the purchase of the land and construction of the works.

Again, it is urged, inasmuch as the land taken under what is called the "flowage act" for the creation of water-power, and this land taken by the city, are each taken for a public use by virtue of the sovereignty inherent in the legislature, that as the former continues subject to taxation so should the latter.   But the mere fact that a municipality and an individual are each allowed by the legislature to become the owners of land by the same process of condemnation does not prove that the same result as to taxation must necessarily follow. That question turns upon ownership, and not upon the manner in which ownership has been acquired.   And the land taken under the flowage act passes from one private corporation or individual to another, and to the property of such no statute or judicial decision has ever accorded exemption; it remains taxable irrespective of the question whether the grantor conveyed it of his own will or upon legislative compulsion.   The omission on the part of the legislature to add to the great privilege of purchasing land contrary to the will of the owner, the still greater one of having the land thus purchased exempted from taxation, is not to be held upon inferential construction as a restriction upon the principle which gives immunity to towns as to property held for public use.   But beyond this, we are not called upon to be judicially blind to the characteristics of this latter use as compared with those

of the use under the flowage act. Under that the land is always taken by private corporations or persons primarily and chiefly for the profit of the shareholder or individual; the good to the public is remote, incidental, uncertain. The town takes primarily and wholly for the public use and good; the profit to the municipal treasury is secondary, remote, uncertain.

The commissioners purchased the whole of certain tracts of which a part only was necessary for their purpose, for the reason that they could thus obtain the whole for a less price than a part, and they now hold one hundred and forty and three quarters acres, valued at $2,000, thus bought. Practically this land was a gift to the city. We cannot deny them the privilege of accepting it and turning it to their profit. But they cannot ask, and we cannot concede, the right thus unnecessarily to enlarge the municipal exemption and extend it over land which they did not buy and have never expected to use for the public good. They are under no obligation to hold it, and so long as they do they should pay the taxes assessed upon it.

We advise the Superior Court that no part of the land is taxable except the hundred and forty and three-quarters acres not used for reservoirs.

In this opinion the other judges concurred.