## OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

The Legislature has the power under the Constitution to authorize the cities and towns within the Commonwealth to manufacture and distribute gas or electric light for use in their public streets and buildings, and for sale to their inhabitants.

THE following order was adopted by the House of Representatives on May 22, 1890, and thereupon transmitted to the Justices of the Supreme Judicial Court, who, on May 27, 1890, returned the opinion which is subjoined.

Ordered, That the opinion of the Justices of the Supreme Judicial Court be required upon the following important questions of law:

First. Is it within the constitutional power of the Legislature to enact a law conferring upon cities and towns within this Commonwealth the power to manufacture gas or electric light for use in the public streets and buildings of such cities and towns?

Second. Is it within the constitutional power of the Legislature to enact a law conferring upon a city or town within this

Commonwealth the power to manufacture gas or electric light for the purpose of selling the same to its own citizens?

And be it further ordered, That the Justices of the Supreme Judicial Court be informed that the foregoing questions are propounded with a view to further legislation upon the subjects therein referred to, and that, for their more particular information, a copy of House Document No. 436, being a bill now pending before this House, and upon the subject matter of which the foregoing questions are propounded, be transmitted to the Justices.

To the Honorable House of Representatives of the Commonwealth of Massachusetts:

We received on May 24, 1890, your order of May 22, 1890, a copy of which is annexed, and we respectfully submit the following opinion.

In considering the questions asked, we assume that the power to be conferred is not merely a power to receive and use property given in trust for the purposes named, but is a power to raise money by taxation, and by means of it to construct and maintain works for the manufacture and distribution of gas or electricity, to be used by the municipalities for lighting the public streets and buildings, and by the inhabitants for lighting the land and buildings which are their private property.

We also assume that the gas or electricity to be furnished to the inhabitants for their private use is to be paid for by them at rates to be established, which shall be deemed sufficient to reimburse to the cities and towns the reasonable cost of what is furnished, and that all the inhabitants of a city or town are to have the same or similar rights to be supplied with gas or electricity, so far as is reasonably practicable, and the capacity and extent of the works, which it is deemed expedient to maintain, will permit. Whether cities and towns can be authorized to give gas or electricity to their inhabitants, or to sell either to them, at varying and disproportionate prices, selecting their customers, selling to some and arbitrarily refusing to sell to others, are questions which it is not necessary to consider.

By the Constitution, full power and authority are given to the General Court to make " all manner of wholesome and reason-

able orders, laws, statutes, and ordinances," not repugnant to the Constitution, which " they shall judge to be for the good and welfare of this Commonwealth," etc., and " to impose and levy proportional and reasonable assessments, rates, and taxes upon all the inhabitants of and persons resident, and estates lying within the said Commonwealth, . . . for the public service, in the necessary defence and support of the government of the said Commonwealth, and the protection and preservation of the subjects thereof," etc.*

The extent of the right of taxation is not necessarily to be measured by that of the right of eminent domain, but the rights are analogous. Private property can be taken without the consent of the owner only for public uses, and the owner must be paid full compensation therefor; otherwise, he would contribute more than his proportional share toward the public expenses. By taxation the inhabitants are compelled to part with their property, but the taxation must be proportional and reasonable, and for public purposes. Taxes may be imposed upon all the inhabitants of the State for general public purposes, or upon the inhabitants of defined localities for local purposes, and when distinct private benefits are received from public works special assessments may be laid upon individuals.

We have no doubt that, if the furnishing of gas and electricity for illuminating purposes is a public service, the performance of this service can be delegated by the Legislature to cities and towns for the benefit of themselves and their inhabitants, and that such cities and towns can be authorized to impose taxes for this purpose upon their inhabitants, and to establish reasonable rates which the inhabitants who use the gas or electricity can be compelled to pay. The fundamental question is whether the manufacture and distribution of gas or electricity to be used by cities and towns for illuminating purposes is a public service.

The maintenance of public streets and buildings is a public service, and it may be reasonably necessary to light them in order that the greatest public benefit may be obtained from using them. To say nothing of the usefulness of lighting streets as a means of promoting order and of affording protection to

---

* Const. Mass., Part II. Chap. I. Sect. I. Art. IV.

persons and property, the common convenience of the inhabitants may require that they be lighted.  Cities and thickly settled towns have for a long time been accustomed to light their public buildings and some of their streets at the public expense. If the streets and public buildings are to be lighted, the means is a matter of expediency.  If the Legislature can authorize cities and towns to light their streets and public buildings, it can authorize them to do this by any appropriate means which it may think expedient.  As a question of constitutional power, we cannot distinguish the right to authorize cities and towns to buy gas or electricity for their use, from the right to authorize them to manufacture it for their use.  We therefore answer the first question in the affirmative.

The second question is one of more difficulty.  It is impossible to define with entire accuracy all the characteristics which distinguish a public service and a public use from services and uses which are private.  The subject has been considered many times in the opinions of the Court of which we are now the Justices, and *Lowell* v. *Boston* [*] is a leading case.  It is there said, that " an appropriation of money raised by taxation, or of property taken by right of eminent domain, by way of gift to an individual for his own private uses exclusively, would clearly be an excess of legislative power"; that " the promotion of the interests of individuals, either in respect of property or business, although it may result incidentally in the advancement of the public welfare, is, in its essential character, a private and not a public object"; and that the appropriation of property for turnpikes and railroads " can only be justified by the public service thereby secured in the increased facilities for transportation of freight and passengers, of which the whole community may rightfully avail itself."  It is said that the essential point is that a public service or use affects the inhabitants " as a community, and not merely as individuals."

It was early decided that " the prevention of damage by fire is one of those objects affecting the interest of the inhabitants generally, and clearly within the scope of municipal authority." [†] Although the property to be protected is private property, the

---

* 111 Mass. 454.          † Allen *v.* Taunton, 19 Pick. 485.

need of protection is felt by every owner in the city or town; the property of one may be endangered by the burning of that of another; efficient means of protecting his property cannot well be furnished by every inhabitant; and there is a necessity of common action which makes the expenditure of money for the purpose properly a municipal expense.

The maintenance of sewers and drains is a public service. One object is the preservation of the public health; but apart from this they are of great convenience to the inhabitants whose estates can be drained by them. It is impracticable for every owner of land in cities and towns to construct and maintain sewers and drains exclusively on his own account; they cannot ordinarily be constructed over any considerable territory without using the public ways, or exercising the right of eminent domain; they are therefore regarded as of common convenience, and are constructed at the public expense.

The furnishing of water for cities and towns for domestic use affords perhaps the nearest analogy to the subject we are considering. It was long ago declared that "the supply of a large number of inhabitants with pure water is a public purpose." * The statutes are well known which authorize cities and towns to maintain waterworks for supplying their inhabitants with water, and the constitutionality of these statutes has not been doubted. Water cannot ordinarily be supplied to a large city or town from ponds or streams without the exercise of the right of eminent domain and the use of the public ways; every inhabitant needs water, and often the only practicable method of obtaining it is by the agency of corporations or of the municipality. The land for the public ways having been taken for a public use, it may be subjected to other public uses, but it cannot be subjected to strictly private uses without the consent of the owners of the fee when the fee remains in the abutters. There is therefore often a necessity of having water, common to the inhabitants of a community, which cannot well be met except by the exercise of public rights, and therefore the furnishing of water has been considered a public service.

In the case of water, as in that of sewers and drains, a por-

---

* Lumbard v. Stearns, 4 Cush. 60.

tion of the service is exclusively public, and the benefit to individuals cannot be separately estimated from that of the community; but a part of the service is rendered to individuals, and the benefit of this can be separately estimated. The inhabitants are therefore required to pay for the water furnished for their private use, and special assessments for the use of sewers and drains are laid upon estates specially benefited; and for the same reasons, while in laying out highways the expense is public, betterment assessments may be laid upon the owners of lands specially benefited.

Artificial light is not, perhaps, so absolutely necessary as water, but it is necessary for the comfortable living of every person. Although artificial light can be supplied in other ways than by the use of gas or electricity, yet the use of one or both for lighting cities and thickly settled towns is common, and has been found to be of great convenience, and it is practically impossible for every individual to manufacture gas or electricity for himself. If gas or electricity is to be generally used in a city or town, it must be furnished by private companies or by the municipality, and it cannot be distributed without the use of the public streets, or the exercise of the right of eminent domain.

It is not necessarily an objection to a public work maintained by a city or town, that it incidentally benefits some individuals more than others, or that from the place of residence or for other reasons every inhabitant of the city or town cannot use it, if every inhabitant who is so situated that he can use it has the same right to use it as the other inhabitants. It must often be a question of kind and degree whether the promotion of the interests of many individuals in the same community constitutes a public service or not. But in general it may be said that matters which concern the welfare and convenience of all the inhabitants of a city or town, and cannot be successfully dealt with without the aid of powers derived from the Legislature, may be subjected to municipal control when the benefits received are such that each inhabitant needs them and may participate in them, and it is for the interest of each inhabitant that others as well as himself should possess and enjoy them.

If the Legislature is of opinion that the common convenience and welfare of the inhabitants of cities or towns will be pro-

moted by conferring upon the municipalities the power of manufacturing and distributing gas or electricity for the purpose of furnishing light to their inhabitants we think that the Legislature can confer the power. We therefore answer the second question in the affirmative.

We notice that the bill,* a copy of which was enclosed with your order, relates to the manufacture and distribution of gas or electricity, not only for furnishing light, but also for furnishing heat and power. We have not considered whether the furnishing of gas or electricity for supplying either heat or power can .be regarded as a public service. We have confined our opinion to the questions asked, which, as we understand them, relate to the manufacture and distribution of gas or electricity solely for the purpose of furnishing light.

Boston, May 27, 1890.

---

* This bill was passed by the House, but was referred by the Senate to the next General Court.