## THE TOWN OF WEST HARTFORD ET AL. *vs.* THE CONNECTICUT FAIR ASSOCIATION, INCORPORATED.

First Judicial District, Hartford, October Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, JS.

A joint-stock corporation organized under the general law for the purposes of promoting, holding and giving agricultural fairs in this State, including horse racing, exhibitions of horses, cattle, dogs, cats, poultry, fruit, vegetables, wild animals, and similar attractions, and for giving purses, prizes and premiums for any and all of such exhibitions, is an "agricultural society" within the meaning of that expression as used in General Statutes, § 2315, exempting from taxation "the stock or property of every incorporated agricultural society."

Such an exemption cannot be said to be contrary to public policy, merely because an agricultural society here and there may occasionally make a profit.

The history of the exemption statute briefly reviewed and *held* not to disclose an intent to discriminate against the property of agricultural societies organized with a capital stock.

The fact that an agricultural society has at times leased its grounds, when not required for its own uses, for horse and automobile racing—presumably using the rent received therefor for the purposes of its creation—does not deprive it of the exemption afforded by the statute.

Argued October 8th—decided December 2d, 1914.

SUIT to recover taxes and to foreclose tax liens, brought to and reserved by the Superior Court in Hartford County, *Bennett, J.*, upon an agreed statement of facts, for the advice of this court. *Judgment advised for defendant.*

*Stewart N. Dunning,* with whom was *Carlyle C. Thomson,* for the plaintiffs.

*Warren B. Johnson* and *Harry W. Reynolds,* for the defendant.

THAYER, J.   The defendant in its answer alleged that its property was not liable to taxation because of the statutes of exemption, and the only question raised upon the record is whether it was so exempt.   If it was not subject to taxation  the liens were void; if it was subject to taxation the liens are, admittedly, valid.

General Statutes, § 2315, provides that "the stock or property of every incorporated agricultural society" shall be exempt from taxation.   The defendant claims to be an agricultural society and thus one of the class whose property and stock is exempt under the statute. The plaintiffs' contention is that the defendant is not an agricultural society, but a joint-stock corporation; that the legislature never intended to exempt the property of such corporations from taxation; that it is against public policy that profit-sharing corporations should be so exempted; and that the statute in question, interpreted in view of its history, does not authorize such exemption.

The finding shows that the defendant is a joint-stock corporation, with capital stock, organized under the general laws of this State, its certificate of incorporation showing that the business to be transacted and the purposes to be promoted and carried out by it are "to promote, hold and give agricultural fairs within the State of Connecticut, including horse-racing, exhibitions of horses, cattle, dogs, cats, poultry, fruit, vegetables, wild animals, and similar attractions, together with the offering of purses, prizes and premiums for any and all of said exhibitions and attractions; to buy, sell, own, convey, lease and mortgage real estate suitable for the above purposes, and to do all things incidental to said purposes."

It is not questioned by the plaintiffs that if the defendant had been incorporated under a special charter or under the general corporation law, without capital

stock, to promote the same purposes, it would be entitled to the exemption as an incorporated agricultural society within the meaning of the statute. Indeed they claim that "our modern corporations without capital stock are the historical, if not the exact legal, successors of the old incorporated agricultural societies" which, prior to 1869, were for the most part, if not exclusively, societies without stock incorporated by special charter or under the provisions of the Act of 1840, found in the Revision of 1866 in §§ 254 to 258 inclusive, on pages 143 and 144. The defendant, incorporated with capital stock for the purpose of holding fairs and thus promoting the agricultural interests of the State, is as much a "society" within the meaning of the statute as it would be if the same persons had been incorporated without capital stock to promote the same interests in the same way. The fact that the interest of each corporator in the property of the corporation is represented by the number of shares of corporate stock held by him, rather than in some other manner, cannot affect the question. In either case the parties are united for the purpose of jointly promoting the common design. Without incorporation they might, by voluntary association, form a society for the promotion of the same interests. By incorporation, either with or without stock, they would become an incorporated society. The statute exempts the property of incorporated societies only, but the exemption is not confined to the property of such societies as have no capital stock. In fact it exempts the *stock* of incorporated agricultural societies, which would not have been done if the legislature had understood that stock corporations could not be agricultural societies.

It is probable, as claimed by the plaintiffs, that it was not the intention of the legislature to exempt the property of profit-making and profit-sharing corporations.

The history of agricultural societies in this State has not placed them in the class of profit-making institutions. The exemption Act is one of several by which State aid has been afforded to such institutions. The first Act exempting these societies from taxation was in 1869. It is possible that since that time some such societies may have become profit-making, but it is a fact of common knowledge that most of them are not so. If the defendant, or any of these societies, begin to make profits and begin to divide these among their stockholders or members, the exemption can be withdrawn from such by another Act of the legislature, as has been done with respect to payments allowed to them by the State to aid in the payment of premiums to exhibitors at the fairs. Exemptions are allowed to physicians, farmers, ex-soldiers and others, however prosperous they may be in their pursuits. It cannot be said that it is contrary to public policy to exempt the stock and property of stock corporations, formed to promote agricultural interests as a part of the State's policy, because they may sometime be able to pay dividends upon their stock. Societies without stock may, in the same way, make a profit, and could divide it among the members of the society. There is nothing, therefore, in the fact that profits may be made in the future which makes the exemption contrary to public policy. It appears from the finding that the defendant has not, as yet, paid any dividend.

There is nothing in the history of the statute under which the exemption is claimed, to show that it was not intended thereby to exempt from taxation the property of agricultural societies organized with a capital stock. It may be admitted that, as claimed by the plaintiffs, no society so organized existed prior to the first exempting statute, that of 1869. The private and public Acts show that societies created by special

charter, and others organized under an Act of 1840, both without stock, then existed, and that the former were authorized to hold real estate of the value of $20,000. Whether agricultural societies with stock then existed or were authorized, is not clear from the statute. A private Act of 1854 authorized "the joint stock company which has or may be . . . organized to aid the Litchfield . . . Agricultural Society," to hold real estate to the value of $2,500; that being the amount which the Litchfield County society was then authorized to hold. It is possible that the new corporation was to aid by taking over the old one, its name and property. If so, then the statute of 1869 exempted it from taxation, with the other societies mentioned. Between 1869 and 1875 there had been organized under special charter agricultural societies in New London, Middlesex and Fairfield counties. These were not exempted from taxation by the statute of 1869, which exempted only existing societies and those thereafter organized under the provisions of the Act of 1840 as embodied in the Revised Statutes of 1866. In this situation the legislature enacted the Revision of 1875, which in § 12, pages 154, 155, contains the language now found in General Statutes, § 2315, under which the defendant claims exemption.

The history of the statute, thus briefly summarized, is claimed to show that the legislature did not intend to include joint-stock corporations, although organized to promote agricultural fairs, within the class of societies exempted. The history shows that a sufficient reason existed at the time of the Revision of 1875 for changing the statute of 1869; for under that statute societies formed under special charter after its enactment were not exempt, while similar societies organized prior to its enactment were exempt. That the revisers, and the legislature in making the change, had in view

the fact that stock companies organized for the same purposes existed or might thereafter exist, and that they would be entitled to the same exemption, seems indisputable from the fact that they exempted the "stock" of agricultural societies as well as their property. The language was broad enough to include all such societies, and we think that joint-stock companies with capital stock were intended to be included.

This is the construction which has been put upon the language by the State officers. It appears from the finding that ever since the year 1889 the secretary of the State Board of Agriculture has recognized these corporations as included among the agricultural societies entitled to payments from the State to be used in the payment of premiums, and that the State Treasurer, upon the order of the board, has made these payments to them. In 1905, in amending General Statutes, § 4399, which provides for these payments, the legislature enacted a law which provided that no portion of the sum allotted to be paid should be paid to any agricultural society which during the preceding four years had declared or paid any dividends to its stockholders or members. Public Acts of 1905, p. 375, Chap. 176. Similar Acts were passed in 1911 and in 1913. These Acts show that it was the understanding of the legislature that the agricultural societies mentioned in the exempting Act included stock companies.

It is found that at times, when the defendant is not holding its fairs upon its grounds, horse and automobile races are frequently conducted there by its lessees. The extent to which this is done does not appear. Nor does it appear that the rentals thus obtained are not devoted to the purposes for which it was organized and the maintenance of its grounds. Presumably they were so appropriated, for it appears that no dividends have been paid to the stockholders. In *First Unitarian Soc.*

v. *Hartford,* 66 Conn. 368, 34 Atl. 89, it was held that leasing a church building for lectures, concerts, and readings, whereby $500 or $600 were secured and devoted to church purposes, did not deprive the society of an exemption under the statute exempting a building occupied exclusively as a church. The fact that the defendant has at times leased its grounds for races, as shown by the finding, for the purpose of maintaining its grounds, or to advance the purposes for which it was organized, does not deprive the defendant of the exemption of the statute.

The Superior Court is advised to render judgment for the defendant.

No costs will be taxed in favor of either party in this court.

In this opinion the other judges concurred.