THE TOWN OF NORTH HAVEN *vs.* THE BOROUGH OF WALLINGFORD.

Third Judicial District, Bridgeport, October Term, 1920.

WHEELER, C. J., BEACH, GAGER, CASE and CURTIS, Js.

General Statutes, § 1160, provides that "buildings, with their appurtenances, belonging to any county, town, city or borough," shall be exempt from taxation. *Held* that this provision, in the light of the common law, should be treated as if it exempted from taxation all property held by municipalities for public use.

An electric-light plant owned and maintained under legislative authority, by a municipality for its own use, and the use of its inhabitants for pay, is exempt from taxation though located in an adjoining town.

Pursuant to legislative authority the defendant borough purchased an acre of land in North Haven on the Quinnipiac River, with the water-rights and mill-privileges appurtenant thereto, and utilized the water-power for generating electricity as an auxiliary to its

North Haven *v.* Wallingford.

steam plant. An old grist-mill was in existence on the property so purchased, and the defendant, in order to preserve its rights, kept it in suitable condition for use and occasionally received and ground the few grists brought to the mill, as the plaintiff insisted the defendant was bound to do under the ancient grant of 1763; but the revenue from this source was trifling. *Held* that under these conditions the grist-mill was but an inseparable part of the defendant's electric plant maintained for public use, and was not subject to taxation.

Argued October 29th—decided December 22d, 1920.

ACTION to recover taxes assessed by the plaintiff upon a piece of real estate on the Quinnipiac River in North Haven owned by the defendant and used by it as a part of its electric light and power plant, brought to and tried by the Superior Court in New Haven County, *Warner, J.;* facts found and judgment rendered for the defendant, both upon the complaint and its counterclaim, from which the plaintiff appealed. *No error.*

On or about January 1st, 1900, the borough of Wallingford, acting under Chapter 231 of the laws of 1893 (now General Statutes, Chapter 30), established a municipal plant run by steam in said borough, for furnishing electric light "for municipal use, and for the use of such of its inhabitants as may require and pay for the same."

By a private Act (13 Special Laws, p. 828) the said borough was authorized, subject to Chapter 231 of the laws of 1893, to sell to its inhabitants "such surplus electricity as it may conveniently generate and manufacture from time to time, for . . . heat and power and for all other purposes for which the same may be applied."

By a private Act (14 Special Laws, p. 660) amending the Act of 1901, said borough was authorized to sell such surplus electricity for the last-mentioned purposes to any person or corporation owning or occupying property within the town of Wallingford, and "for

the purpose of utilizing the water-power of the Quinnipiac River in the manufacture of electricity, was empowered to "purchase and hold real estate on said river" in Wallingford and in North Haven contiguous to Wallingford. Pursuant thereto the borough, about October 1st, 1906, purchased about one acre of land in North Haven contiguous to Wallingford, with the water rights and mill privileges appurtenant thereto. The borough utilized said water-power and generated electricity thereby, and transmitted it to and used it as an auxiliary to the pre-existing steam plant, for the purpose of reducing the burden of taxation in maintaining said municipal electric plant. The expense of establishing said plants and of operating and maintaining them during the period in question, came from the treasury of the borough, into which treasury flowed all revenue from the plants.

At the time of the purchase of said premises in North Haven by the borough, there was a grist-mill thereon erected in 1764 and continuously operated for the benefit of the public, and dependent upon the water-power furnished by the dam and water-privilege so purchased by the borough. The purchase necessarily included the old mill. The right to erect and maintain said dam on said river was granted to the original mill owners and their heirs by vote of the town of New Haven legally passed March 28th, 1763, on condition that the privilege of the stream should be theirs so long as the dam and grist-mill should be kept in repair fit for service. At the time of said grant, North Haven was a parish within said town of New Haven. There is no other grist-mill in the town of North Haven or immediate vicinity, and said grist-mill is and has been of public use and convenience to such of the public, for a radius of some six miles, as have grain to be ground. The borough holds under said grantees.

The borough, for the necessary accommodation of its new power-house, new wheels and machinery, and enlargement of the head race, was obliged to remove the south half of the grist-mill building, but, as an incident to its ownership of the property, permitted the other half of the building to remain with the machinery therein. By this arrangement the borough was saved considerable expense for the removal of the entire building, which would have rendered necessary an additional outlay for the construction of a retaining wall on the river side of the head race; the possible impairment of the right to the stream by adverse flowage rights, or diversion, was protected by keeping the grist-mill machinery in repair fit for service, so far as public use and convenience required; and the borough has thereby also been able to utilize the upper portion of the building for storage purposes, and has so used it for the storage of materials for use of its electric power plant.

On the trial plaintiff made the claim that the borough was obliged, under the terms of its grant and purchase, to continue the operation of the grist-mill. The borough has continued to operate the grist-mill on the rare occasions when grists were brought to it, as it was claimed it was required to do under the terms of the original grant of the town of New Haven in 1763. The borough did not operate the grist-mill as a money-making scheme, and always operated it subject to the primary use of generating electricity by the water-power sufficient to maintain the peak load at all times. The upper story of the grist-mill has been used as a storage place for electric material. The borough had no direct legislative authority to conduct a grist-mill.

Upon said acre of land and the buildings thereon of the borough of Wallingford, the plaintiff has laid taxes during the years 1908 to 1916, inclusive, which

the borough has refused to pay, claiming they were unlawfully laid.

*Ward Church*, for the appellant (plaintiff).

*Oswin H. D. Fowler*, for the appellee (defendant).

CURTIS, J. The plaintiff claims that the court erred in not holding that all of the property of the defendant in North Haven was taxable; and further claims, that in any event the grist-mill on the property was taxable.

Our statutes (General Statutes, § 1160) provide that "buildings, with their appurtenances, belonging to any county, town, city or borough" shall be exempt from taxation. This provision, in the light of the common law, should be treated as if it exempted from taxation all property held by municipalities for public use. *West Hartford* v. *Water Commissioners*, 44 Conn. 360, 368; *Hamden* v. *New Haven*, 91 Conn. 589, 101 Atl. 11.

The plaintiff claims that as the borough was generating electricity not only to light its own streets and public places, but also to sell it for light, heat and power, to the inhabitants of Wallingford, it was not using its North Haven plant for a public use, but for a use that was essentially private. It is the recognized law that the furnishing of electricity to the public for light, heat and power, for pay, is a public use, for which the power of eminent domain may be exercised. 1 Lewis on Eminent Domain (3d Ed.) § 268; Judson on Taxation (2d Ed.) §§ 387, 388. It is now the common law in Connecticut and in substantially all the States, that a municipality, which, acting under legislative authority, maintains and operates a public-service plant and furnishes water or gas or electricity for light, heat and power, to itself, and to its inhabitants for

pay, holds such plant for a public use. The great weight of authority holds that such a plant is exempt from taxation, wherever situated within the State of the municipality. *West Hartford* v. *Water Commissioners,* 44 Conn. 360, 369; *Traverse City* v. *Blair Township,* 190 Mich. 313, 157 N. W. 81; Idem, Ann. Cas. 1918E, p. 81 and note; *Hamden* v. *New Haven,* 91 Conn. 589, 101 Atl. 11; Idem, 3 A. L. R. 1435 and note; *New London* v. *Perkins,* 87 Conn. 229, 87 Atl. 724; *Opinion of the Justices,* 150 Mass. 592, 24 N. E. 1084; Judson on Taxation (2d Ed.) § 388; Pond on Public Utilities, § 322. These principles of law and the public policy underlying them have been so fully set forth in the quoted cases and elsewhere, that it is no longer desirable to repeat them. The electric light plant of the defendant located in North Haven was, therefore, exempt from taxation by that town.

The plaintiff suggests that, under § 10 of Chapter 231 of the Public Acts of 1893 (General Statutes, § 506), relating to the price that a municipality may charge for gas or electricity produced by a municipal plant, it may be that the borough of Wallingford is not now and never has been and never will be subjected to any expense in conducting the electric plant in question, but on the contrary, the borough may always have been making a profit therefrom, and that consequently, if the judgment of the Superior Court is sustained, the town of North Haven by its loss of the power to tax a portion of its territory is the only municipality put to any expense in maintaining the electric plant in question for the benefit of the borough of Wallingford. The town claims that therefore it is not just that its right to tax the portion of the plant located in North Haven should be denied. There is, however, nothing in the finding to show that this suggested possibility is a fact, and hence no question in relation to the matter

is before us for decision.  Influenced no doubt by the possibility of such an unjust and oppressive condition arising as is here suggested by the plaintiff, the State of New York has provided by statute that the "property of a municipal corporation of the State held for a public use" shall be exempt from taxation "except the portion of municipal property not within the corporation."  8 Birdseye's Consol. Laws of N. Y. (2d Ed.) p. 8284, § 4, par. 3.

In the years 1913 to 1916 inclusive, the grist-mill on said acre of land of the defendant in North Haven was assessed for taxation as a distinct item by the town.  The town claims that the use of the grist-mill by the defendant for pay makes it a lawful subject of taxation.  When the defendant purchased the water-power and the essential land in North Haven connected therewith, under legislative authority, if it had found thereon a grist-mill which it deemed it could run profitably as a commercial proposition, and then did so run it solely for such purpose, a situation would be presented which would render the plaintiff's claim seemingly valid.  The situation presented by the finding is far different.  The water-power in question was granted to the defendant's predecessor in title upon condition that the grist-mill should be kept fit for service.  The plaintiff claimed that the defendant could not hold the land and water-power without operating the grist-mill.  The defendant under such claim, and to protect itself from the possible impairment of its right to the stream by diversion or adverse flowage rights, has continued to keep the grist-mill in a condition for service, and has received and ground the rare and occasional grists brought to the mill.  The mill is not run for money-making and the net income from it is inconsequential.  The receipts from the mill are merged with all the receipts from the plant, and its expenses

are paid from appropriations by the defendant for the operation of its electric plant. Under these conditions the grist-mill building is an inseparable part of the electric plant of the defendant held for public use. Its maintenance and operation as a grist-mill, for the purposes stated above, are purely a subordinate incident in the maintenance by the defendant, unimpaired, of the water-power of its entire plant. It is not an independent commercial enterprise. As the grist-mill is not run as a commercial enterprise, but as an incident to the maintenance of the water-power for the electric plant, the mere receipt of a trifling revenue, which went into the borough treasury, does not render the mill subject to taxation. *Hamden* v. *New Haven*, 91 Conn. 589, 101 Atl. 11; *West Hartford* v. *Connecticut Fair Asso.*, 88 Conn. 627, 92 Atl. 432; *Perth Amboy* v. *Barker*, 74 N. J. L. 127, 65 Atl. 201. We hold, therefore, that the grist-mill building is not a subject of taxation, separable from the electric plant, under the conditions now prevailing.

There is no error.

In this opinion the other judges concurred.