[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action first came to this Court by writ, summons and complaint dated May 4, 1995 and filed on May 19, 1995 with a return date of May 30, 1995, which complaint was initiated by the Plaintiff seeking a dissolution of the marriage of the Plaintiff and the Defendant, an equitable division of all real and personal property and other relief as of record appears.
The Plaintiff was represented by counsel in filing the petition.
The Defendant appeared by counsel on June 7, 1995.
An answer and a cross complaint was filed by the Defendant on June 7, 1995 and in the prayer for relief in the cross complaint the Defendant sought a legal separation, a fair and equitable property settlement and an assignment of the Plaintiff's interest in certain jointly owned real estate located on Anthony Road, CT Page 2864 North Stonington, an allowance to defend and other relief as of record appears.
Various motions were filed by counsel prior to a hearing on the merits including a motion by Plaintiff's counsel to withdraw, dated July 19, 1996, which was granted by the Court, Teller J., on August 5, 1996.
On September 9, 1996, the Defendant filed another answer and cross complaint, and in this prayer for relief sought a dissolution of the marriage and other relief as of record appears.
On January 14, 1997, new counsel appeared for the Plaintiff.
The parties each appeared before the court with their counsel on February 14, 1997 and February 24, 1997 and were heard.
The parties filed financial affidavits and allied papers at the time of hearing.
THE COURT, HAVING HEARD THE TESTIMONY AND RECEIVED THE EXHIBITS, MAKES THE FOLLOWING FINDINGS OF FACT.
The Plaintiff, whose maiden name was Diane Russo, and the Defendant were married on April 12, 1986 at Groton, Connecticut by a Justice of the Peace.
The parties have resided in Connecticut for more than one year prior to the initiation of the instant complaint.
There are no minor children issue of this marital union. There are no children issue of this union.
Neither party has been the recipient of assistance from the State of Connecticut or any town or municipality therein.
The marriage has broken down irretrievably with no reasonable prospect of reconciliation.
The Plaintiff is age 33 and in good health, her education extended through high school.
Plaintiff has been employed at the Foxwoods Casino since December 1995 where she works on a computer issuing markers and CT Page 2865 handling cash flow.
Plaintiff works five days a week at an hourly rate of $8.14, plus health insurance benefits.
Plaintiff's prior employment included secretarial work at Electric Boat for ten years, and prior to that as a clerk at the Millstone Power Complex.
The Defendant is age 44 and in good health, his education extended through high school.
Defendant is employed as a union electrician, I.B.E.W. Local 90.
The parties first met in early 1985.
The Defendant was divorced from his first wife in July 1985.
A relationship having developed between the Plaintiff and the Defendant, the parties undertook to purchase certain real estate located on Anthony Road in North Stonington from Tammy L. Davis et al on December 20, 1985. See Plaintiff's Exhibit A.
The purchase price for the property was $75,000.00.
The premises comprised two contiguous parcels, one being 12.339 acres and the other 28.952 acres.
See North Stonington Land Records Vol. 65, pages 170-172.
The Defendant provided the entire down payment of $20,000.00. See Defendant's Exhibit 4.
There was a mortgage back to the sellers for $55,000.00.
The parties had briefly lived together before the marriage.
In addition to the employment history of the Plaintiff recited above and during the marriage, the Plaintiff worked at the following jobs part time.
Franklin's Restaurant, International House of Pancakes, Magnavision, Dunkin Donuts, Old Lyme Country Club, O'Brien and Shafner attorneys. CT Page 2866
When the real estate was purchased, the parties talked about "living on the land".
The parties hoped to build a home and barns on the property.
Incident to Defendant's dissolution of his first marriage, he was paying $225.00 weekly for alimony and support.
In 1987 a camper was purchased for the purpose of living in the camper on the land.
The Plaintiff resided in said camper for two nights and felt constrained to leave in that there was no running water or hot water, no bathroom, inadequate heat, no potable drinking ; water and no septic system.
Plaintiff moved in with her mother, whose home provided basic amenities.
The Defendant continued to reside in the camper.
The parties have lived separately since October 1987.
The Plaintiff regularly brought the Defendant food and did his laundry.
There were horses on the land which each of the parties tended.
The parties would go shopping together and continued physical relations.
The parties engaged in woodcutting or gathering activities jointly.
The parties maintained a joint checking account.
The Defendant was in charge of the checking account.
Joint debts were paid from the checking account.
The parties caused a barn and a shed to be erected on the property to shelter the animals. CT Page 2867
Defendant caused a tractor trailer to be brought on the premises, in which structure he presently resides.
The floor of the camper is rotted out and will not permit the possibility of habitation.
The Defendant wrote out and sent all the checks in payment of the mortgage, which has now been paid off, and Defendant wrote out all the checks for the taxes.
The Plaintiff made financial contributions to the Defendant to assist in the orderly liquidation of the mortgage.
The Plaintiff basically supported herself and received no meaningful support from the Defendant during the time Plaintiff has resided with her mother.
Plaintiff paid her mother $60.00 weekly for board.
Plaintiff loves animals, especially horses. She owns two draft horses, rabbits and dogs.
Plaintiff owns a horse trailer.
In August of 1993, Plaintiff began a relationship with a Ron Collins.
Plaintiff had given Collins a horse with a knee defect (chipped bone), but Collins couldn't handle the animal and returned the horse to Plaintiff.
Plaintiff feeling that the marriage had broken down due to the parties residing apart and there being no home on the land, undertook an affair with Collins and started to reside with him.
Plaintiff sought professional counseling beginning in January of 1994, which lasted for a year.
Plaintiff paid for the counseling herself.
The 1974 Corvette shown on Plaintiff's financial affidavit was her sole property before the marriage.
In January 1996, the parties were before the court relative to problems on the land involving Mr. Collins. The court found a CT Page 2868 technical, but not willful, contempt and entered certain orders relative to Mr. Collins not going on the property.
The Plaintiff admitted violating the order but claimed that mindful of the physical strength required to care for the animals, handle bales of hay, grain and like matters, and mindful of her being a relatively slight person, that physical help was needed to achieve a certain end result.
The Court on February 14 and February 24 was not requested to make any findings of contempt.
Both parties have funded their own pensions.
Plaintiff makes no claim as to real property of the Defendant in Orange, Connecticut.
Neither party has requested periodic alimony.
There has understandably been some friction between the Defendant and Collins.
The Plaintiff did make a weekly or periodic financial contribution to the Defendant, which may have been as much as $92.00 per week.
Plaintiff admits it was wrong for her to become involved with Collins.
The Defendant acknowledged that the Plaintiff always worked a primary job and part-time or second jobs.
Defendant, who is presently employed by Dyson Electric, earns $22.00 hourly.
Defendant's financial obligations incident to his first marriage end in May 1997.
Defendant acknowledged that all drinking water had to be brought on the site in containers and that any source of water on the premises had never been tested.
Heat in the trailer where Defendant resides is from a wood stove. CT Page 2869
The Defendant testified that the real estate of the parties was assessed by the Town at $249,000.00.
Defendant's property (his 1/3 interest) in the Orange, Connecticut parcel is on the market for $175,000.00.
The Defendant acknowledged Plaintiff's help on the land during a one-year period when firewood was sold.
Defendant has caused the land to be designated forest land for tax purposes.
Defendant was still married, admittedly a divorce was pending, when he started dating Plaintiff.
Plaintiff, at the time of this marriage was age 21, the Defendant age 33.
On the hearing being resumed on February 24, 1997, the parties, by counsel, stipulated that the value of the 12.339 acre parcel was $20,000.00 and the value of the 28.952 acre parcel was $80,000.00.
A review of the comparative incomes of the parties, as set forth in Plaintiff's Exhibit F, would reasonably suggest that the Defendant, who claims to have paid off the mortgage entirely through his own efforts and without any contribution by the Plaintiff, could not have been accomplished solely by the Defendant, mindful of his earnings over the years as shown in Exhibit F and his obligation in paying alimony and support incident to his first marriage.
The Defendant did not support the Plaintiff through any periodic contribution to her expenses.
The Plaintiff supported herself plus the benefits provided by her parent mother.
The Plaintiff's weekly income from the Foxwoods Casino is $325.60 gross, $250.89 net, additional income from Discover Vending $46.15.
The Defendant's weekly income is $796.23 gross, $544.87 net. I.B.E.W. CT Page 2870
The Defendant inherited his interest in the Orange, Connecticut real property from his grandmother in June 1986.
The Defendant's mother, Louise DeNard, testified that her son was a hard worker, that on occasion he asked for loans, always paid her back, and that Defendant was on occasion unemployed, which lends credence to Plaintiff's Exhibit F.
The Defendant's stepfather, Charles DeNard, testified that on occasion when the Defendant was out of work, he assisted Defendant financially.
Ronald Collins admitted the relationship with the Plaintiff.
Collins visited the subject real estate twice to assist Plaintiff in the care of animals.
ON THE BASIS OF THE FOREGOING, THE COURT ENTERS THE FOLLOWING ORDERS.
The marriage is dissolved on the grounds of irretrievable breakdown and the parties are declared to be single and unmarried.
No periodic alimony is awarded to either party and neither made any request for alimony.
As to the real estate located on Anthony Road, North Stonington, title to which stands in both names, the Court directs that the Plaintiff shall have the smaller parcel comprising 12.339 acres, and the Defendant shall execute a proper deed to effect title in said parcel to the Plaintiff.
The Defendant shall have and retain the larger parcel consisting of 28.952 acres, and the Plaintiff shall execute a proper deed to effect title in said parcel to the Defendant.
The Defendant may keep and retain his interest in the Orange, Connecticut real estate.
The Plaintiff may retain her 1974 Corvette motor vehicle, her 1994 Pontiac Sunbird and her 1986 Camaro. Plaintiff may retain the "farm pickup truck" and her horses, be they draft horses or saddle horses. CT Page 2871
Plaintiff may retain the two small bank accounts of $100.00 each shown on her affidavit.
Plaintiff may retain her SSIP Electric Boat pension fund of $14,000.00.
Plaintiff may retain the car trailer, the horse trailer and stone bolt noted on her affidavit.
Defendant may retain the 1983 GMC pickup truck.
Defendant may retain his bank accounts at Liberty Bank — $7,573.00, Shawmut Bank IRA — $2,687.00 and Fleet Bank — $2,949.00
Defendant may retain his I.B.E.W. Local 90 Annuity Fund valued at approximately $57,672.00.
Defendant shows no debts on his financial affidavit.
Plaintiff's affidavit discloses debts amounting to $13,300.00.
As noted herein, the parties through their counsel stipulated as to the value of the real estate in North Stonington, to wit $80,000.00 for the larger parcel and $20,000.00 for the smaller.
Certainly this is at marked variance with the assessment figure as testified to by the Defendant.
Between the two days of hearing, the Court had expected to hear from appraisers, but none appeared on the second day.
The Plaintiff was candid and forthright in acknowledging her inappropriate conduct with Collins.
The Plaintiff acknowledged the mistakes in allowing Collins on the land and endeavored to explain the same out of necessity in requiring help with the animals.
The Court is inclined to the view that if reasonably adequate housing had been provided with just basic amenities like a kitchen, hot water, bathroom, potable water, safe heating and furniture that the end result might have been different and the parties would have resided together. CT Page 2872
If some modest effort had been made by the Defendant to provide a reasonable home and seek a mortgage, the end result would undoubtedly be different.
The Plaintiff could not reasonably have been expected to live in the so-called camper or trailer, and therefore her residency of two days is understandable.
The Defendant's attitude was that the Plaintiff then went to her mother's where she "had it easy".
The Plaintiff was fortunate to have an understanding parent.
On the other side of the coin, the Court cannot approve of Plaintiff's relationship with Collins.
The Court is not prepared to assign all of the fault for the dissolution to the Plaintiff.
Defendant's failure to provide any support or even a marginal home to the Plaintiff must share in the fault.
The Defendant shall pay to the Plaintiff the sum of $5,000.00 within 90 days.
The Plaintiff and the Defendant shall each be responsible for their own attorney's fees.
In arriving at its decision, the Court has considered the provisions of Connecticut General Statutes §§ 46b-81, 46b-82
and 46b-84. See Caffe vs. Caffe, 240 Conn. 79 (1997).
In apportioning the assets as best the Court is able in a just and equitable fashion, mindful that there was no request for periodic alimony by either party, the Court exercises its general equitable power. See Lord vs. Lord, 44 Conn. 370 (1997).
Austin, J.